**William S. SIRES, Jr.,**
**Plaintiff, Appellant,**

v.

**Louis M. BERMAN, et al.,**
**Defendants, Appellees.**

**No. 87–1243.**

United States Court of Appeals,
First Circuit.

Heard Sept. 16, 1987.
Decided Nov. 24, 1987.

---

Margaret H. Marshall with whom Leonard M. Singer, by Appointment of the Court, and Csaplar & Bok, Boston, Mass., were on brief for appellant.

William A. Mitchell, Asst. Atty. Gen., Civ. Bureau, with whom Mark P. Sutliff, Asst. Atty. Gen., Civ. Bureau, and James M. Shannon, Atty. Gen., Boston, Mass., were on brief for appellees William Callahan, Michael Walonis, Cecil Driscoll, Vera Derosa, Joan Dalton, Ruth Balboni, Steven Chretian, Jean Plasse and John Krikorian.

Thomas C. Federico with whom Peter C. Knight, Bruce R. Henry and Morrison, Mahoney & Miller, Boston, Mass., were on brief for appellees Ronald I. Goldberg & Associates, Shirley Greene and John J. McNulty.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Sires, plaintiff below, appeals from summary judgment on a 42 U.S.C. § 1983 action brought against the medical staff, supervisors and guards of the Massachusetts Correctional Institute at Norfolk (MCI–Norfolk) (nineteen defendants in all) where he is an inmate. The complaint alleges that several of the defendants demonstrated a deliberate indifference to Sires' medical needs in violation of the eighth amendment, while others are accused of submitting a disciplinary report for the purpose of preventing him from asserting his constitutional right of access to courts.

On appeal, Sires mainly challenges the district court's finding that there were no genuine issues of material fact as to the eighth amendment claim and as to the improper disciplinary report claim; and the lifting of default judgments against, with the subsequent entry of summary judgments for some of the defendants.

*Background*

While an inmate at MCI–Norfolk, Sires underwent a cardiac catheterization in Massachusetts General Hospital (MGH) in Boston. As a result of that and other tests he was diagnosed as having a coronary artery disease. After consultations with the physicians at MGH, Sires elected to undergo by-pass surgery in the future, and returned to MCI–Norfolk where he was placed in the infirmary.

The doctors at MGH recommended he remain in the infirmary only a few days to recover from the catheterization incision. He stayed, however, from February 21, 1981 until April 19, 1981.

One of the medications recommended by the MGH doctors, and prescribed at the infirmary, was nitropaste—nitroglycerin in

paste form. This medication is applied externally, and absorbed through the skin. It acts to dilate the blood vessels around the heart, allowing more oxygen to reach the heart. In addition the MGH doctors recommended that Sires be put on a low sodium, low cholesterol diet.

Sires is reported to have acted belligerently during the time that he was in the infirmary, and several clashes occurred between him and the staff there, culminating in the events giving rise to this litigation. The infirmary staff had always applied the nitropaste to him. One evening during medication call, he asked nurse Balboni, who was on duty, to help him again. The nurse was apparently attending to another patient, and told him to "do it yourself," allegedly adding a vulgar statement. Sires claims that, at the time, he was unable to apply the paste anywhere but on his back, since the front of his body was inflamed from previous applications. The nurse did come back later, but another inmate had already helped Sires.

A few days later, when nurse Balboni came back on duty, Sires approached the duty officers, Plasse and Chretian, and said, as he later reported, "that I didn't want to be put in a Trick Bag or Jackpot with this nurse, and if she came out of the left hand side of her mouth with something vile, and refused to treat me that I might do something foolish and nail her." Sires also told the guard, according to the report, that he better be careful because they may meet again. This incident prompted the disciplinary report challenged in the complaint.

After this the medical staff discontinued the practice of assisting Sires with the nitropaste. A couple of infirmary physicians decided Sires could apply it himself, and this decision was later ratified by the original doctor at MGH. After several more altercations Sires was discharged from the infirmary.

Two days later, Sires missed the 8:00 a.m. medication call. He informed the superintendent of the problem. The superintendent referred it to the assistant superintendent, who called the infirmary and was told that Sires could wait for the noon call without adverse effects. In fact, no adverse effects from this delay appear anywhere in the record.

Finally, Sires complains that some of the meals he received did not comply with his prescribed diet. He did, however, discuss these lapses with a dietitian who attempted to ensure that they did not recur.

I. *Discussion*

A. *Deliberate indifference to a serious medical need.*

■ The Supreme Court has recognized that deliberate indifference on the part of prison staff to the serious medical needs of an inmate can constitute cruel and unusual punishment under the eighth amendment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A plaintiff must satisfy two elements to present a viable claim: he must show a serious medical need, and he must prove the defendant's purposeful indifference thereto.

■ Sires attempts to satisfy the first of these two elements by arguing that his heart condition is serious, and that the nitropaste is necessary to control it. Assuming that he had an urgent need for the nitropaste—though the record reflects that he also had nitroglycerin pills he could use in an emergency—Sires has not shown a serious need for the application of the paste by a nurse. He could, as he did, have another inmate apply the paste, or, on occasion, apply it himself. In fact, the expert's testimony was to the effect that rarely, if ever, do nitropaste users count upon medical assistance.

He does claim that he once was not helped when he could not apply it himself, and he had to find another inmate to do it for him. The record shows, however, that he simply could have waited until the nurse finished with another patient. Indeed, the fact that he could find another person to apply the paste indicates he really did not need the nurse. He also complains that, after several incidents with the nursing staff, the doctors decided he no longer needed assistance and that this decision

was not based on medical factors, but was a *post hoc* rationalization for the nurses' reluctance to help him. He does not, however, show any ill effects from this deprivation. Sires undeniably has a serious heart condition, but he has not presented any evidence of a serious medical need that has gone unmet.

As the district court found, this is, at worst, a case of a petty squabble with an overworked, or even rude, nurse, something not foreign to the experience of many of us not in prison, and certainly not an indifference that can offend "evolving standards of decency." *Estelle v. Gamble, supra,* at 106, 97 S.Ct. at 292.

■ Even if we agreed that the evidence supports an initial inference of a need gone unmet, Sires is far from a threshold showing of deliberate indifference. The worst incident Sires can point to is that a nurse initially refused to give him medicine when he could not apply it himself, but came back to help him when she was done with another patient. Surely the courts should not undertake to tell nurses in which order to attend to their patients.

■ The next challenged decision, by the doctors, is also not actionable. They made a considered medical decision, after balancing different elements, to discontinue the staff's application of the nitropaste. This circuit has already recognized that safety factors are properly included in the evaluation of the medical needs of an inmate. *Layne v. Vinzant,* 657 F.2d 468 (1st Cir.1981). Sires' relationship with the infirmary staff and the relatively minimal need for a nurse to apply the nitropaste are sufficient justifications for the change in treatment. We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors. *Layne v. Vinzant, supra,* at 474; *Ferranti v. Moran,* 618 F.2d 888, 890–91 (1st Cir.1980).

■ The decision by prison officials to allow Sires to wait a few hours for his medication when he missed the morning call is no different. The officials balanced his need for immediate attention—practically nil, in the opinion of the doctors consulted—against the requirements for the orderly functioning of the prison and decided to let him wait. There is nothing in the record to show that this was an instance of callous disregard in the face of a pressing medical emergency. This case, far from involving deliberate indifference, demonstrates an extensive course of medical treatment for a serious heart condition, with a peripheral disagreement over who should apply certain medicine, without any indication that an interruption or shortcoming in the treatment has ever resulted.

It is true that issues concerning state of mind (such as deliberate indifference) are often unsuited to resolution on summary judgment. *Stepanischen v. Merchants Dispatch Transp. Co.,* 722 F.2d 922 (1st Cir.1983). In this case, however, the district court acted properly: there is no evidence that Sires received treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional. Any conclusion regarding the defendants' state of mind must rest on observable actions. None have been presented that demonstrate anything more than carefully thought-out medical decisions.

Since we find no merit to the claim against the infirmary and medical personnel, there is perforce no merit to the claim against their superiors. In fact, these prison officials, after proper investigation, learned of and relied upon the recommendations of the doctors and nurses, as they are entitled to do. *Layne v. Vinzant,* at 472 (citing *McCracken v. Jones,* 562 F.2d 22, 24 (10th Cir.1977), *cert. denied,* 435 U.S. 917, 98 S.Ct. 1474, 55 L.Ed.2d 509 (1978)). There being no genuine issue of material fact on any of the deliberate indifference claims, summary judgment for all defendants was appropriate.

B. *The unconstitutional disciplinary report.*

■ It is of course true, that guards are precluded from disciplining inmates for an

**14**

improper purpose. *See Gomes v. Fair,* 738 F.2d 517, 525 (1st Cir.1984). However, the Supreme Court has recognized that deference is due prison administrators in their attempts to secure the safety of prison staff, and to preserve discipline in the prison. *Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979).

▮ The district court expressly found that no reasonable jury could find that the defendants did not have a good faith and reasonable belief that Sires was threatening prison staff. Sires said he might "do something foolish and nail" Nurse Balboni, adding to the guard that he had better be careful because they might meet again. Surely it would approach a dereliction of duty if the guard did not report this as a threat against prison personnel. If Sires wished to be interpreted as threatening legal action he should have chosen words reasonably subject to such interpretation.

In view of Sires' history of conflicts with the nursing staff, the undeniably threatening statement made to the guard, and the deference we owe to the guards' on the spot judgment, we agree with the district court that summary judgment was warranted on this claim.

*C. The removal of the default judgments.*

▮ The district court lifted default judgments it had imposed on certain defendants who filed answers to the complaint three years late. We have repeatedly held that the decision to set aside a default judgment is within the sound discretion of the district court. *See, e.g., Taylor v. Boston and Taunton Transp. Co.,* 720 F.2d 731 (1st Cir.1983); *American & Foreign Insurance Assoc. v. Commercial Insurance Co.,* 575 F.2d 980 (1st Cir.1978). The court below found that it would be unjust to impose liability by default, on a completely meritless claim. It apparently decided that defendants' lapse did not merit such harsh punishment, once it found that the other defendants were entitled to summary judgment on those same claims. We

do not find this so farfetched as to constitute an abuse of discretion.

▮ Appellant, however, claims he was not afforded an opportunity to respond to the entry of summary judgment in favor of those whose defaults had just been cleared. These defendants, however, had filed a motion for removal of default and summary judgment, on which a hearing was held. If appellant chose then to rest on the default judgment, he cannot be heard to complain now, particularly in light of his silence at the hearing, after the court announced that it was lifting the default judgments and entering summary judgment.

▮ Apparently, the court has not yet lifted the default judgments against two of the defendants, although it indicated at the hearing that it would do so. Appellees urge us to take some unspecified action in this respect "in the interest of judicial economy." We suggest that any motions on this issue be addressed to the district court, in whose discretion it lies to lift or enforce the default judgments. It was undue delay that created the problem for these defendants, and we encourage some alacrity in attempting its solution.

The judgment of the district court is *affirmed.*