**Ellen TORRACO, etc.,**
**Plaintiff, Appellant,**

v.

**Michael MALONEY, etc., et al.,**
**Defendants, Appellees.**

No. 90–1477.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1990.
Decided Jan. 18, 1991.

---

Harold I. Resnic, Springfield, Mass., for plaintiff, appellant.

Charles M. Wyzanski, Legal Counsel, Dept. of Correction, with whom Nancy Ankers White, Sp. Asst. Atty. Gen., Boston, Mass., was on brief for defendant, appellee, Michael Maloney.

Lee Carl Bromberg with whom Kerry L. Timbers and Bromberg & Sunstein, Boston, Mass., were on brief for defendant, appellee, Edward Messina.

Before CAMPBELL and TORRUELLA, Circuit Judges, and ATKINS,[*] Senior District Judge.

ATKINS, Senior District Judge.

Ellen Torraco, administratrix of the estate of Michael Torraco, her son, appeals from a decision of the district court granting summary judgment in favor of the defendants Michael Maloney and Edward Messina, the prison psychologist and the superintendent of MCI–Cedar Junction, respectively. Plaintiff/appellant Ms. Torraco filed suit under 42 U.S.C. § 1983, alleging that her son's suicide was caused by the defendants/appellees' deliberate indifference to his serious mental health and safety needs in violation of the eighth amendment to the United States Constitution. The district court found that the record contained insufficient evidence of deliberate indifference for a jury to return a verdict in Ms. Torraco's favor. We affirm.

## I. *Background*

Summary judgment is appropriate against a party who, after a sufficient time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A showing is sufficient if the evidence offered is "such that a reasonable party *could* return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis

[*] Of the Southern District of Florida, sitting by designation.

added). Thus, in determining whether summary judgment is appropriate, we examine the record in the light most favorable to Ms. Torraco and indulge in all inferences in her favor. *Id.* at 255, 106 S.Ct. at 2513; *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990). We have set out the largely undisputed facts mindful of this standard.

On April 18, 1984, eighteen-year-old Michael Torraco ("Torraco") received an eighteen-to-twenty-year sentence for three counts of arson and manslaughter for setting a fire in which a woman with whom he had lived and her two young children were killed. Torraco was sent to MCI–Cedar Junction, where on April 26, 1984 he told an intake counselor that he had tried to kill himself while in county jail awaiting sentencing. In response to further questioning, Torraco told the counselor that he did not presently have suicidal thoughts and that he wanted to "make the best of jail." The counselor concluded that Torraco no longer was suicidal and that he should be released into the general population. The intake counselor's written report describing the questioning went into Torraco's file.

On May 10, 1984, Torraco was transferred to MCI–Concord, where on June 21, 1984 he was determined to have adjusted very well to the general population. However, while under the influence of homebrew in August 1984, Torraco assaulted an officer, kicking him in the legs. Torraco later attributed the incident to his poor mental health. As a result of the assault, Torraco was reclassified to MCI–Cedar Junction, a maximum security facility. Upon his return to MCI–Cedar Junction, during a second intake evaluation on November 21, 1984, Torraco denied ever attempting suicide but admitted to substance abuse and stated that he wished to receive individual counseling. On December 26, 1984, he was accepted into a substance abuse program at the prison. Torraco participated in but did not complete this program, due to his refusal to take a urine test, a prerequisite for continued participation. However, Torraco asked defendant Messina, the prison psychologist, to see him on an individual basis. Messina agreed. Torraco and Messina met for counseling on a weekly basis between September 1, 1985 and December 26, 1985, the day before Torraco's death. These counseling sessions focused primarily on Torraco's feelings of remorse and guilt about his crime and his feelings of pain and anger regarding the physical and psychological abuse he received from his parents during his early childhood.

On December 21, 1985, after being found in a stupor in his cell, Torraco reported that he had taken an overdose of T.H.C. pills.[1] During a counseling session on December 24, 1985, Torraco told Messina that he had not taken the pills to harm himself, but had misjudged the potency of the pills in an attempt to get "high" to avoid Christmas sadness. He also said he wanted more time with Messina. Two days later, on December 26, 1985, Messina and Torraco met for the last time. At this meeting, Torraco provided the details of his incestuous relationships with his mother, the plaintiff/appellant in the present action, and with her brother, which began when Torraco was five or six years old.[2] Despite appearing anxious and nervous at the beginning of the session, Torraco told Messina at the end of the session that he was "o.k." and that he would meet with Messina the next day. He took his life the following morning.

## II. *Discussion*

■ The eighth amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."[3]

---

1. "T.H.C." is the acronym for tetrahydrocannabinol, an active constituent of marijuana.

2. Torraco told Messina that his mother forced him to walk around the house naked at a party and to perform sexual acts with her. Torraco also reported being raped and forced to have oral sex with his uncle while pictures were taken.

3. The eighth amendment applies to the states through the fourteenth amendment. *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556,

The Supreme Court has held that deliberate indifference on the part of prison personnel to the "serious medical needs" of an inmate constitutes cruel and unusual punishment because it "offend[s] 'evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 106, 97 S.Ct. 285, 290, 292, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). This court has previously recognized that the eighth amendment also protects against deliberate indifference to an inmate's serious mental health and safety needs. *See Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558, 560 (1st Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).

■ A finding of deliberate indifference requires more than a showing of negligence. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman,* 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292; *see also Cortes–Quinones,* 842 F.2d at 558. Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires,* 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care." *Miranda v. Munoz,* 770 F.2d 255, 259 (1st Cir.1985) (quotations omitted).

■ A state-of-mind issue such as the existence of deliberate indifference usually presents a jury question. *Sires,* 834 F.2d at 13. However, where there is no evidence of treatment "so inadequate as to shock the conscience, let alone that any

deficiency was intentional," *id.,* or evidence of acts or omissions "so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred," *Cortes–Quinones,* 842 F.2d at 558 (quotation omitted), summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (holding that summary judgment appropriate where non-movant fails to make a showing sufficient to establish the existence of an element essential to that party's case).

The appellant argues that the record contains evidence of two omissions sufficiently dangerous to raise an inference of defendants' deliberate indifference to Toracco's mental health and safety needs: defendants' failure to provide Toracco with psychiatric care, as opposed to the care he received from Messina, a psychologist; and defendants' failure to take any protective action such as placing Torraco in a "suicide cell." Because we conclude, on the basis of the undisputed record, that neither omission renders the treatment Torraco received sufficiently inadequate or dangerous to "offend 'evolving standards of decency,'" *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 (quoting *Trop,* 356 U.S. at 101, 78 S.Ct. at 598), we affirm the ruling of the district court.

A.

■ This circuit has recognized that deliberate indifference to an inmate's serious mental health needs violates the eighth amendment. *See Cortes–Quinones,* 842 F.2d at 560; *see also Ferola v. Moran,* 622 F.Supp. 814, 820 (D.C.R.I.1985). The extension of the eighth amendment's protection from *physical* health needs, as presented in *Estelle,* to *mental* health needs is appropriate because, as courts have noted, there is " '[n]o underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart.'" *Laaman v. Helgemoe,* 437 F.Supp. 269, 313 (D.C.N.H.

558 (1st Cir.), *cert. denied,* 488 U.S. 823, 109     S.Ct. 68, 102 L.Ed.2d 45 (1988).

1977) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir.1977)).

Although the record contains sufficient evidence that Torraco had a serious mental health need,[1] it contains no evidence supporting a finding that defendants were deliberately indifferent to that need. To the contrary, the record shows that prison officials accommodated Torraco the two times he expressed a need for mental health attention. After indicating a desire to receive substance abuse counseling on November 21, 1984, Torraco was accepted into the substance abuse program. After Torraco approached Messina about the possibility of individualized counseling sessions, the two met on a weekly basis during the three-and-a-half months leading up to Torraco's death. After Torraco's December 21, 1985 overdose, which Torraco insisted was not an attempt to harm himself, Messina agreed to meet more often. We find that rather than manifesting deliberate indifference to Torraco's need for mental health attention, this undisputed evidence shows a thoughtful concern on defendants' part for Torraco's mental well-being.

Notwithstanding the affirmative steps taken by Messina, appellant argues that the failure to provide Torraco with the care of a psychiatrist, as opposed to a psychologist, violates the eighth amendment. Although deliberate indifference to an inmate's serious need can be found even where some affirmative action has been taken, *Miranda*, 770 F.2d at 259, appellant offers *no* evidence that defendants' failure to provide psychiatric care either rendered the treatment received "so inadequate as to shock the conscience," *Sires*, 834 F.2d at 13, or constitutes an omission "so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred," *Cortes–Quinones*, 842 F.2d at 558 (quotation omitted); *cf. Waldrop v. Evans*, 871 F.2d 1030, 1032 (11th Cir.1989) (finding sufficient evidence of deliberate indifference where psychiatrist withheld lithium medication in face of progressive self-mutilation of known manic depressive inmate).

A party opposing a motion for summary judgment may not rest upon the conclusory allegations contained in her complaint, but must set forth evidence establishing the existence of an essential element to her claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Because appellant has offered no evidence that defendants' failure to provide psychiatric, as opposed to psychological, care was sufficiently dangerous or inadequate to support a finding of deliberate indifference, we find without merit her claim regarding defendants' failure to provide Torraco with psychiatric care. *Cf. Cortes–Quinones*, 842 F.2d at 559–60 (finding evidence stating inmate's need for psychiatric counseling and evidence contending that disputed action never should have been taken by prison officials sufficient to uphold verdict of deliberate indifference).

### B.

Appellant next argues that defendants' failure to take any protective action such as placing Torraco in a "suicide cell" constitutes deliberate indifference to his serious need for safety. Because prison suicides are analogous to the failure to provide medical care, we agree that "deliberate indifference" is the appropriate "barometer" by which suicide cases involving convicted prisoners should be tested. *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir.1990). An allegation of deliberate indifference in such a case must be considered in light of the level of knowledge which the prison officials possessed, or should have possessed, as to the inmate's suicidal tendencies. *Id.* at 1564 (citing *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir.1988)). As with mental health needs, a finding of deliberate indif-

---

**4.** Our conclusion that a jury could find that Torraco had a serious mental health need is based on the following facts: that Torraco attempted suicide in April of 1984 in confinement while awaiting sentencing; that he assaulted a prison official in August of 1984 and later attributed the incident to his poor mental health; and that he overdosed on T.H.C. pills on December 21, 1985.

ference to an inmate's need for safety requires more than a showing of negligence. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Sires*, 834 F.2d at 13.

Although the record contains sufficient evidence suggesting that Torraco presented a risk of suicide,[5] we find that defendants' failure to take protective action such as placing Torraco in a "suicide cell" neither renders the actions taken "so inadequate as to shock the conscience," *Sires*, 834 F.2d at 13, nor constitutes an omission "so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred," *Cortes–Quinones*, 842 F.2d at 558 (quotation omitted). A finding of deliberate indifference requires a strong likelihood, rather than a mere possibility, that self-infliction of harm will occur. *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983).

Torraco's responses to prison staff inquiries and the affirmative actions taken by Messina support our conclusion that the undisputed record cannot sustain a finding that defendants were deliberately indifferent to Torraco's need for safety.[6] Messina's failure to take any protective action in lieu of or in addition to scheduling additional counseling sessions may very well present a claim of negligence. However, as with other serious needs, a finding of deliberate indifference to an inmate's need for safety requires more than a showing of negligence. Here, it requires evidence that Messina's scheduling of additional counseling sessions was "so inadequate as to shock the conscience," *Sires*, 834 F.2d at

13, or that his failure to take further protective action was "so dangerous (in respect to health or safety) that [his] knowledge of a large risk can be inferred," *Cortes–Quinones*, 842 F.2d at 558 (quotation omitted). Because we find no such evidence, we conclude that the record does not support a finding of deliberate indifference to Torraco's serious need for safety.

### III. *Conclusion*

In light of the foregoing, the district court's order granting defendants' motions for summary judgment is *AFFIRMED*.

---

**5.** Our conclusion is based on the following information which Messina possessed or should have possessed regarding Torraco's suicidal tendencies: that in April of 1984 Torraco attempted suicide in confinement while awaiting sentencing; that he overdosed on T.H.C. pills on December 21, 1985; and that on December 26, 1985, he was depressed and upset, as he had been at least once during past Christmas holidays.

**6.** As described previously, following his April 1984 suicide attempt, Torraco told a prison intake officer that his suicidal thoughts were "all over now" and that he wanted to "make the best

of jail." Record at 28. When Messina asked Torraco on December 24, 1985 whether his recent overdose was an attempt to harm himself, Torraco answered that it was not, explaining that he had merely sought a high to avoid Christmas sadness but had misjudged the potency of the pills. After Torraco indicated a desire on December 24, 1985 for more time with Messina, the two met for a counseling session on December 26, 1985. At that meeting, when Messina concluded that Torraco understandably was depressed and upset, but not suicidal, Messina scheduled a meeting for the following day.