14 F.3d 44
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Gaylon MASSEY, Plaintiff, Appellant,
v.
Robert RUFO, ETC., ET AL., Defendants, Appellees.
 No. 92-1380.
 United States Court of Appeals,
First Circuit.
 January 14, 1994
 
 Appeal from the United States District Court for the District of Massachusetts
 Gaylon Massey on brief pro se.
 Melissa J. Garand, on Motion for Summary Disposition, for appellees.
 D.Mass.
 VACATED AND REMANDED
 Before Cyr, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Gaylon Massey filed an action in the district court pursuant to 42 U.S.C. Sec. 1983. At the time of the events described in the complaint, he was a pretrial detainee at the Suffolk County Jail. His complaint alleged that his constitutional rights were violated by jail personnel by the use of excessive force, by their deliberate indifference to his medical needs and by the involuntary administration of psychotropic drugs. The district court, in a margin order, granted defendants' motion for summary judgment on the ground that plaintiff had failed "to support his substantive allegations by factual evidentiary material." It also denied plaintiff's motion to amend the complaint and his request for an extension of time to complete discovery. Plaintiff appeals.
 
 A. Deliberate Indifference to Medical Needs
 
 2
 To prevail on such a claim, plaintiff must establish that defendants' actions amounted to the "wanton infliction of unnecessary pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference to serious medical needs of prisoners" satisfies this standard. Id. at 104.[1]
 
 
 3
 Negligence and inadvertence in providing medical treatment do not state a valid claim of deliberate indifference. Id. at 105-06.
 
 
 4
 "Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors." Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987). In this situation, deliberate indifference may be established only "where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.' " Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (quoting Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985)). There is nothing in the record to show any refusal to treat plaintiff. He was seen the same day as the incident, provided with medication and sent for a consultation to the hospital. Plainly, there is no material question of fact that defendants were not "deliberately indifferent" to plaintiff's medical needs. Discovery would not aid plaintiff.
 
 
 5
 B. Involuntary Medication with Psychotropic Drugs
 
 
 6
 It has been clear since February 1990 that a prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."
 
 
 7
 See Washington v. Harper, 494 U.S. 210, 221-22 (1990).[2] Harper involved a challenge to the state of Washington's procedures for medicating prisoners housed in its Special Offender Center (SOC), an institution for convicted felons with serious mental illnesses. The specific question the Court addressed was whether a judicial hearing is required before a state may treat a mentally-ill prisoner with antipsychotic drugs against his will. Id. at 213. The Court determined that the SOC's policies, which did not provide for such a hearing, were constitutional. Id. at 231.
 
 
 8
 The facts of the case at hand, however, concern not the treatment of a prisoner with antipsychotic drugs, but the emergency administration of this kind of medication based on a pretrial detainee's threatening behavior. Qualified immunity protects state actors from damages claims under Sec. 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 9
 The events here took place in late August and early September 1990, over five months after Harper issued in February. However, we do not think the right established in Harper bears a sufficient relationship to the right alleged here. That is, there was no caselaw in August or September 1990 that clearly established that a pretrial detainee had a right under the Fourteenth Amendment to the procedures announced in Harper before he could be given antipsychotic medicine in an emergency situation.
 
 C. Excessive Force
 
 10
 The standards governing the use of excessive force are set out in Whitley v. Albers, 475 U.S. 312 (1986). To show an Eighth Amendment violation when force is used, an inmate must demonstrate "the unnecessary and wanton infliction of pain."[3] Id. at 320. This inquiry, in turn, depends on " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Id. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973)). Finally, the Court has recognized that deference should be accorded to prison administrators in the use of practices and policies that they believe are necessary to maintain the security of the institutions they run. Id. at 321-22.
 
 
 11
 To be entitled to summary judgment, a moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant has met this standard, the burden shifts to the non-moving party to establish the existence of "at least one issue that is both 'genuine' and 'material.' " Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) (citation omitted); Fed. R. Civ. P. 56(e). Here, plaintiff did not file any affidavits or other record evidence in opposition to the summary judgment motion.
 
 
 12
 Turning to defendants' evidence, we do not think that the record is adequate to support summary judgment. Plaintiff alleges in his complaint that he was "severely beating [sic] by several of the defendants which resulted in a separation [sic] shoulder, lacerations to the face and head, bruises to the chest, arms and groin area, caused by the excessive use of force." He also claims that defendants caused the "unnecessary and wanton infliction of pain." Next, plaintiff states that when he insisted on finishing his meal, his food tray was grabbed and that the jailer shoved him; he then states that he was jumped on and his arms twisted behind him. Finally, he claims that he was dragged to a cell while being kicked all over.
 
 
 13
 There are four disciplinary reports relating to the incident in question. The first two describe plaintiff's refusal to return to his room after dinner. According to the officers, plaintiff threw down his spoon, said he was not going back to his room and told the officers that they might as well take him to "the hole." These officers immediately notified the Sheriff's Emergency Response Team ("S.E.R.T."). There are no reports from any members of the S.E.R.T. concerning precisely in what manner plaintiff was restrained and how much force actually was used to subdue plaintiff and take him to a cell. The only references to the incident are contained in the reports of the two officers who had originally called the S.E.R.T. They state simply that plaintiff "was restrained and taken to the 6-1 unit."
 
 
 14
 In their motion for summary judgment, defendants simply assert that the officers "used no more force than was necessary." They cite, in support of this conclusion, the log book for August 31st; the only relevant information on the page in question simply states that at 5:25 p.m., "Sert team called to move inmate Gaylon Massey to 6-1." Significantly, there are no affidavits from any of the jail personnel stating that they did not use any more force than they reasonably believed necessary and that the force was not excessive, much less any affidavits describing what, in fact, actually happened.
 
 
 15
 In general, grants of summary judgment in cases of this kind have rested upon affidavits describing the actual event and refuting the suggestion of undue force. See, e.g., Tarpley v. Greene, 684 F.2d 1, 4 (D.C. Cir. 1982) (where plaintiff filed a Sec. 1983 action claiming that officers assaulted him during a search of his home, summary judgment appropriate because defendant filed an "uncontroverted affidavit" denying assault took place). Even if jail records were treated as a substitute, the records here-as noted-also fail to provide such a description of the nature and extent of the force used. Thus, we think that the record falls short of establishing that there is no material dispute about the use of undue force and that a remand is required on that claim.
 
 
 16
 In fairness to the able district judge, we note that there is an affidavit supporting the view that plaintiff had been guilty of disruptive behavior on two prior occasions in August 1990. It is a fair guess that, when the officers do file affidavits, they will not only assert the gist of the disciplinary reports relating to August 31, 1990, but will also seek to show that they did not use excessive force. The medical records indicate a sprained shoulder but there is no indication of laceration or severe wounds. Accordingly, we express no view on whether summary judgment may be appropriate if and when officer affidavits addressed to this incident are submitted.
 
 
 17
 The judgment of the district court is affirmed as to the claims of deliberate indifference to plaintiff's medical needs and the involuntary administration of an antipsychotic drug. The judgment is vacated as to the claim that defendants used excessive force in removing plaintiff from the dining area and the matter is remanded for further proceedings.
 
 
 
 [1]
 Because plaintiff was a pretrial detainee, the Eighth Amendment does not apply; rather, the due process clause of the Fourteenth Amendment is the rubric under which plaintiff's claims are analyzed. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Elliot v. Chesire County, 940 F.2d 7, 10 & n. 1 (1st Cir. 1991) (applying "deliberate indifference" standard under the due process clause to a claim of inadequate medical treatment provided to a pretrial detainee)
 
 
 [2]
 In 1992, in Riggins v. Nevada, 112 S. Ct. 1810 (1992), the Court decided that a detainee had the right to be free from treatment with antipsychotic drugs during trial unless the state had determined that "treatment with antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of [the detainee's] own safety or the safety of others." Id. at 1815 (emphasis added)
 
 
 [3]
 In cases involving pretrial detainees, the Due Process Clause applies. Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)