USCA1 Opinion

 

 June 6, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2118 NAZZARO SCARPA, Plaintiff, Appellant, v. LARRY E. DUBOIS, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Nazzaro Scarpa on brief pro se. ______________ Nancy Ankers White, Special Assistant Attorney General, and ____________________ William D. Saltzman on brief for appellee Larry E. Dubois. ___________________ ____________________ ____________________ Per Curiam. On April 26, 1993, while a prisoner in __________ the Northeastern Correctional Center (NCC), in Concord, Massachusetts, Nazzaro Scarpa filed, pro se, a lawsuit, pursuant to 42 U.S.C. 1983, against Larry E. Dubois, the Commissioner of Correction. Scarpa sued Dubois, not in his official capacity, but in his individual capacity. Scarpa alleged that (a) his cell contained exposed asbestos pipe insulation; (b) Dubois knew that the insulation was ripped, but did nothing to protect Scarpa from this exposure; (c) asbestos was blown about when his window was open; (d) Scarpa washed white powdery asbestos from his face every morning; (e) he coughed and choked from the asbestos; and (f) he had been seen by a doctor, who prescribed medication for an inflamed throat and ordered a chest x-ray.1 Scarpa alleged a violation of the Eighth Amendment (made applicable to the states via the Fourteenth Amendment) and requested five million dollars in damages. Scarpa attached to his 1983 complaint a copy of a letter, dated December 1992, from Howard S. Wensley, Director of the Division of Community Sanitation of the state Department of Public Health. The letter was not addressed to defendant Dubois. Rather, it was addressed to Jake Gadsen, ____________________ 1. Scarpa attached to his complaint a label to a prescription for tetracycline. The label references a Dr. O'Dwyer. We presume, therefore, that Dr. O'Dwyer also ordered the x-ray. -2- Administrator of NCC. Defendant Dubois was "cc-ed" on the letter, as were seven governmental officials and agencies. The letter recited that NCC had been inspected on November 24, 1992, in accordance with public health laws and regulations. A 12-page "Report of Condition" was attached to the letter. The report listed cells and other areas of NCC where the inspectors had found public health code violations. The violations listed in the report included, for example, broken window crank mechanisms, cracked windows, lack of hot water in a bathroom sink, a badly pitted floor, cigarette butts on floor, and a chipped toilet bowl. It cited Cell 36 as having "asbestos pipe insulation ripped." The cover letter from Director Wensley to Administrator Gadsen did not discuss the existence of asbestos. It did state the following: The inspection revealed the need for extensive window work. Problems include broken window crank mechanisms, windows that won't close tightly, and cracked windows. It was also noted that there is water leaking through the walls into the electrical room. In accordance with Section 451.404 of the previously mentioned regulations please indicate next to each entry on the enclosed Report of Condition, a plan of correction. Said plan of correction should detail the specific steps that will be taken and the date by which compliance should be expected. In July 1993, Scarpa moved to add Clare Friel, a nurse at NCC, and Scott McKenna, the Director of Treatment at NCC, -3- as additional defendants. Simultaneously, Scarpa moved for summary judgment. In addition to reiterating the allegations of his complaint, Scarpa alleged that he submitted several requests for medical treatment, but had "never been called" by Friel and that she refused to send him for the ordered x- ray. He further alleged that he had received a memorandum from McKenna, which told him to submit a grievance. Scarpa stated that he had done so, but that the grievance was "disregarded" (not, we note, that he got no response) and he was denied the requested treatment. On August 10, 1993, the district court granted Scarpa's motion to add Friel and McKenna as defendants. That same day, the court denied Scarpa's request for summary judgment and ordered judgment for the defendants, sua sponte. Judgment entered on August 23 and Scarpa has appealed. We affirm. To succeed on a claim alleging a violation of the Eighth Amendment, Scarpa must show both an objective component (was the deprivation sufficiently serious?) and a subjective component (did the official/s act with a sufficiently culpable state of mind?). Wilson v. Seiter, 501 ______ ______ U.S. 294, 298 (1991); DesRosiers v. Moran, 949 F.2d 15, 18 __________ _____ (1st Cir. 1991); Sires v. Berman, 834 F.2d 9, 12 (1st Cir. _____ ______ 1987). In other words, Scarpa must show a deliberate indifference to a serious medical need. Wilson v. Seiter, ______ ______ -4- 501 U.S. at 303; see also Hudson v. McMillian, 112 S. Ct. ___ ____ ______ _________ 995, 1000 (1992).2 At best, Scarpa's complaint alleges only that Dubois knew that the piping insulation in Cell 36 was ripped and that he did nothing in response. Scarpa asks that we infer Dubois' knowledge from the fact that Dubois apparently received a copy of Director Wensley's letter and report directed to Administrator Gadsen. That report noted the ripped insulation in Cell 36 among a 12-page list of violations. That particular violation was not singled out by Director Wensley in any manner, as contrasted with the highlighting of the need for extensive window repair and of leaking water in the electrical room. Scarpa thus asks that we infer Dubois' knowledge from a report, directed to another's attention, in which the reference to ripped asbestos pipe insulation in Cell 36 was subsumed among more than 100 other notations of violations.3 ____________________ 2. We construe Scarpa's complaint as complaining about Dubois' failure to remove him from Cell 36 and Friel's and McKenna's conduct in treating his medical condition. The standard remains the same. "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle [v. _______ Gamble, 429 U.S. 97 (1976)]." Wilson v. Seiter, 501 U.S. at ______ ______ ______ 303 (citation omitted). 3. There is no evidence that exposed asbestos was rampant in NCC. Cell 36 was the only cell in which ripped pipe insulation was noted. Apart from it, the only other reference to asbestos in Director Wensley's report was the -5- Even if we were to grant that Dubois' knowledge of the existence of ripped asbestos pipe insulation in Cell 36 is a reasonable inference, the mere presence of asbestos does not violate the Eighth Amendment. See, e.g., McNeil v. Lane, 16 _________ ______ ____ F.3d 123, 124-25 (7th Cir. 1994) (the mere presence of asbestos-covered pipes does not constitute an Eighth Amendment violation); Diaz v. Edgar, 831 F. Supp. 621, 624 ____ _____ (N.D. Ill. 1993) (same). Scarpa failed to allege, much less show, that Dubois knew of the dispersal of asbestos powder in Cell 364 and Scarpa's medical complaints and, thus, that Dubois acted (or his failure to act was joined) with a sufficiently culpable state of mind. Scarpa, therefore, failed to show deliberate indifference on Dubois' part. In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. The requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, _____ delay, or interference with prescribed health care. While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the appreciably stricter criminal- ____________________ notation that "friable asbestos pipe insulation" was found in the "old boiler room" in the basement. 4. Even granting that Director Wensley's Report of Condition sufficed to give notice to Dubois of ripped asbestos pipe insulation in Cell 36, that report did not describe friable asbestos in Cell 36. Contrast the report's description of "friable asbestos pipe insulation" found in the old boiler room in the basement. -6- law sense, requiring actual knowledge of ______ impending harm, easily preventable. DesRosiers v. Moran, 949 F.2d at 19 (citations omitted) __________ _____ (emphasis added). As for defendants Friel and McKenna, all that Scarpa's allegations amount to is a claim that (a) Friel refused to send him for an ordered x-ray; (b) McKenna instructed him to file a grievance; and (c) Scarpa did, but he was unhappy with the results of that process.5 Summary judgment in favor of McKenna was clearly appropriate. McKenna informed Scarpa of a procedure by which to get relief. It is perverse to suggest that such conduct could amount to deliberate indifference in violation of the Eighth Amendment. And, in the circumstances of this case, even accepting as true for purposes of summary judgment, the allegation as to Friel's conduct, we do not believe that it meets the threshold for deliberate indifference to a serious medical need. Scarpa got some treatment, i.e, the prescribed medication, for his medical complaints. Although he apparently failed to receive additional ordered treatment, he was directed to file, and did file, a grievance. That the grievance process did not produce a renewed order for an x- ____________________ 5. As pointed out, supra, at 4, Scarpa does not say that he _____ got no response to the grievance; rather, he claims that, in response, he was denied the requested medical treatment. In any event, he does not claim that McKenna disregarded the _______ grievance. -7- ray suggests to us that the prescribing doctor did not consider the need for an x-ray to be a grave one. Cf. Sires ___ _____ v. Berman, 834 F.2d at 13 ("Where the dispute concerns not ______ the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."). Moreover, the purpose of an x-ray is not preventative treatment, but to show a presently-existing injury. Harm to Scarpa exists from the failure to provide the x-ray during his period of incarceration only if it resulted in a delayed diagnosis of injury. We note that, subsequent to the filing of this lawsuit, but prior to the filing of his appellate brief, Scarpa was released from prison. He, therefore, has had the opportunity to obtain an x-ray, if he continued to believe his medical condition warranted one, and to point out what, if anything, of significance was revealed by a later- obtained x-ray that would have also shown up in an earlier x- ray that was refused him. He has not done so. Indeed, his brief on appeal does not address, with any specificity, the alleged failure to provide an x-ray. That omission is telling. See Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, ___ ____ ______________________ 734 (1st Cir. 1990) ("It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned."). -8- For the foregoing reasons, we affirm the judgment in ______ favor of the defendants. Affirmed. _________ -9-