**Roderick S. WILLIAMS, a/k/a Rhoda R. Williams, Plaintiff,**

v.

**ONE FEMALE CORRECTIONS OFFICER SGT. KOLACZYK and Worcester County Jail and House of Correction Infirmary, Defendants.**

**Civil Action No. 95–40209–NMG.**

United States District Court, D. Massachusetts.

Sept. 25, 1996.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The above-entitled action was filed on October 3, 1995 by Roderick S. Williams ("Williams"), a *pro se* plaintiff, against Sergeant Kristen Kolaczyk ("Kolaczyk"), a correctional officer, and the Worcester County Jail and House of Correction ("WCJHC"). Plaintiff invokes this Court's jurisdiction pursuant to 42 U.S.C. § 12101 (the Americans with Disabilities Act), as well as 42 U.S.C. §§ 1981 and 1983.

Pending before this Court is 1) Williams' Motion for Summary Judgment, filed on February 16, 1996 [Docket # 9], and 2) defendants' Motion to Dismiss Or, in the Alternative, For Summary Judgment [Docket # 15]. For the reasons that follow, plaintiff's motion will be denied and defendants' motion will be allowed.

## I. *Factual Background*

### A. *Plaintiff's Complaint*

At the time of the events about which he complains, plaintiff was an inmate at the WCJHC. In May, June and July of 1995, Williams spent various periods of time in the facility's infirmary. Defendant Kolaczyk is a corrections officer who works on the 11 p.m. to 7 a.m. shift at WCJHC and performs hourly bed checks of the infirmary area. Complaint ¶ 2, 6.

Paragraph 5 of the Complaint alleges that, one (unspecified) evening in July, 1995, plaintiff suffered severe chest pains between 11 p.m. and 7 a.m., when the infirmary is "closed" and no nurses, doctors, or orderlies are on duty. When Kolaczyk arrived at the infirmary to perform a bed check, Williams informed her that he: 1) had severe chest pains, 2) had taken 3 nitroglycerine tablets and 3) wanted to be taken to the hospital. *Id.* at ¶ 6. The Complaint further alleges that Kolaczyk, from a distance of ten feet away, responded that she could tell that he was "faking it" and walked out of the infirmary. *Id.* Plaintiff asserts that he "had to suffer numerous heart attacks and chest pains [during] those 3 months of 11 p.m. to 7 a.m. bed checks by [Kolaczyk]," and was not sent to the hospital until he collapsed uncon-

scious on the floor of the infirmary. Complaint ¶ 7.[1] *Id.*

As a result of the "pain and suffering he had to endure in the infirmary of the jail from May 23, 1995 to August 7, 1995," plaintiff demands an award of damages in the amount of $1 million.

## B. *Medical records*

In support of their argument that no actionable constitutional violation occurred, defendants principally rely upon uncontroverted medical records indicating the extensive medical care provided to Williams during the months in question. Those records demonstrate the following:

On May 11, 1995, Williams was taken to the emergency room at St. Vincent's Hospital in Worcester, complaining of chest pains. After extensive testing at the hospital, Williams underwent a cardiac catheterization, coronary angiography and balloon angioplasty. Various medications were prescribed and he was discharged from the hospital on May 23, 1995, and transferred directly back to the WCJHC infirmary. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit A.

Williams was provided an oxygen concentrator at his infirmary bedside. *Id.* at Exhibit B (Progress Notes of WCJHC Medical Staff), at 3. During the following weeks in the infirmary, plaintiff's health improved, even though the medical staff noted that plaintiff was not using the oxygen concentrator. *Id.* at 6. On June 19, 1995, at Williams' request, he was moved out of the infirmary. *Id.* at 7.

On July 7, 1995, Williams complained of nasal congestion, coughing up of phlegm, tiredness and a bloody nose. *Id.* at 9. Plaintiff was returned to the infirmary that same day, and on the following morning he was admitted to St. Vincent's Hospital. The infirmary's records demonstrate that plaintiff was transferred to the hospital upon the orders of defendant Kolaczyk, who observed

Williams during her watch on the 11 p.m. to 7 a.m. shift. *Id.* at 10.[2] Medications were prescribed and Williams was returned to the WCJHC on July 13, 1995.

On July 18, 1995, Williams was readmitted to St. Vincent's hospital for chest pains and was again returned to the WCJHC infirmary on July 21. On August 3, 1995, plaintiff was transported to St. Vincent's Emergency Room for an Oximetry Test to determine the need for oxygen. The report provided by the hospital states that Williams "did not need oxygen." Exhibit D at 2.

On August 7, 1995, with WCJHC physician Dr. Raul Endriga's approval (and much to plaintiff's displeasure), Williams was transferred from the infirmary back to the general inmate population. Plaintiff responded by shouting obscenities at the medical staff, throwing his inhaler across the room, refusing to accept medication in his cell and threatening lawsuits. Exhibit B at 16–18.

While at the state courthouse on September 12, 1995, plaintiff again was stricken and transferred to St. Vincent's Hospital. *Id.* at 24. Plaintiff was diagnosed with 1) acute atrial fibrillation with associated coronary artery disease, and 2) congestive heart failure. Exhibit E at 2. A variety of medication was prescribed and Williams was ultimately discharged on September 18.

On September 25, 1995, plaintiff complained of chest pains and requested a nitrogen tablet, which was given to him. Exhibit B at 27. The following day, plaintiff again complained of chest pains and a cough, for which he received nitrogen tablets and Tylenol. Plaintiff stated that he felt better and returned to the cell block. *Id.* at 27. On September 28, Williams called to see the physician, but failed to appear for his appointment. Progress notes kept by the medical staff indicate that for an extended period after October 3, 1995, plaintiff received medical treatment from WCJHC personnel almost on a daily basis. Exhibit B at 29–45.

---

1. Williams was hospitalized four times between May 23 and September 17, 1995. Complaint ¶ 7.

2. According to the hospital records, Williams began experiencing chest discomfort on the morning of July 8 at approximately 2:30 a.m., and had already been transported to and treated at St. Vincent's hospital by 6:00 a.m. that morning. Exhibit C.

## II. Summary Judgment Standard

Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

With respect to a motion for summary judgment, the burden is on the moving party to show that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

## III. Legal Analysis

### A. Plaintiff's § 1983 claim

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment." When a defendant claims that state prison officials violated the Eighth Amendment by withholding essential health care, he must demonstrate that their actions amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *see also Sires v. Berman*, 834 F.2d 9, 11 (1st Cir. 1987) (in order to present a viable claim, a plaintiff must demonstrate: 1) a serious medical need, and 2) defendant's purposeful indifference thereto). The First Circuit has observed that, when evaluating the quality of medical care in an institutional setting, courts must be sure to weigh fairly the practical constraints facing prison officials. *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

In order to establish deliberate indifference, "the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." *DesRosiers*, 949 F.2d at 19. The First Circuit has explained that the requisite state of mind:

> may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care. While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.

*DesRosiers*, 949 F.2d at 19 (internal citation omitted).[3]

In view of the standard delineated above, this Court agrees with defendants' contention that plaintiff's claim of deliberate indifference must fail. From May 11, 1995, when plaintiff first appeared in court on his pending criminal charges, until September 18, 1995, the plaintiff was hospitalized on four occasions some of which were from the infirmary at the prison where he had been housed for extended periods of time. The medical records summarized above clearly demonstrate that the plaintiff was provided ample medical care and treatment at the facility, almost on a daily basis, and frequently without his cooperation. The extensive medical care is hardly supportive of plaintiff's claim of a constitutional violation.

Furthermore, Williams' allegation that Sergeant Kolaczyk refused to transport Williams to the hospital in July, 1995 is abrogated by the fact that, on July 8, 1995, it was Kolaczyk who ordered plaintiff to be transferred to St. Vincent's Hospital when he

---

**3.** *See also Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of treatment, it does not guarantee to a prisoner the treatment of his choice.").

complained of chest pains. Throughout the month of July and thereafter the plaintiff was constantly monitored and treated by professional medical staff whenever he complained of chest pains. Ultimately, although Williams undoubtedly has a serious heart condition, he "has not presented any evidence of a serious medical need that has gone unmet," *Sires,* 834 F.2d at 13, and, accordingly, his § 1983 claim must be dismissed.

**B.** *Plaintiff's Claims Pursuant to 42 U.S.C. §§ 1981, 12101*

■ Summary judgment similarly is appropriate with respect to the claims advanced by plaintiff pursuant to 42 U.S.C. §§ 1981 (prohibiting discrimination that is racially motivated) and 12101 (the Americans with Disabilities Act). Defendants properly note that, although plaintiff's Complaint cites those statutes, the Complaint fails to allege either that race or nationality was a motivating factor in the alleged misconduct, or that he was discriminated against on the basis of a particular disability. Accordingly, plaintiff's claims pursuant to those statutory provisions must be dismissed.

### ORDER

For the foregoing reasons, plaintiff's motion for summary judgment [Docket # 9] is DENIED and defendants' motion to dismiss or, alternatively, for summary judgment [Docket # 15] is ALLOWED. Plaintiff's motion for a trial date and jury selection [Docket # 17] is, accordingly, DENIED AS MOOT.

So ordered.