Philip S. ROSEN, as Administrator of the Estate of the Decedent, Eugene Souza, Jr.

v.

Doctor William CHANG, John Moran, Unknown Members of the Rhode Island Adult Correctional Institute Medical Staff, Unknown Adult Correctional Institute Guards, the State of Rhode Island, and Cleo Dardeen.

Civ. A. No. 90–0620 P.

United States District Court, D. Rhode Island.

Jan. 12, 1993.

---

Robert F. DiPippo, Providence, RI, Bruce G. Rosen, Boston, MA, for plaintiff.

J. Renn Olenn, Olenn & Penza, Warwick, RI, for defendant Chang.

Maureen G. Glynn, Richard B. Woolley, Office of the Atty. Gen., State of R.I., Providence, RI, for defendants Moran and State of R.I.

Robert E. Hardman, Providence, RI, for defendant Dardeen.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case is presently before me on the defendants' Motions to Dismiss or in the Alternative Motions for Summary Judgment alleging they are entitled to qualified immunity for all 42 U.S.C. § 1983 claims against them. For reasons which follow, the motions are denied, except as to defendant John Moran.

### I.

On February 15, 1991, I issued a Memorandum and Order, *Rosen v. Chang*, 758 F.Supp. 799 (D.R.I.1991), disposing of the defendants' motion to dismiss the entire action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. I concluded that the claim against defendants Chang and Moran, in their official capacity, had to be dismissed as dictated by *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), but that the claim against them in their individual capacity retained its viability. Since that time, the complaint has been amended to add Cleo Dardeen as a party defendant.

### II.

The action is in the nature of a medical malpractice suit. Dr. Chang is accused of improperly diagnosing repeated complaints of abdominal pains as an upset stomach when in fact the decedent was suffering from acute appendicitis, the ailment that ultimately caused his death.

Defendants recite the following facts to support their argument that no material facts are in dispute:

1. Eugene Souza was convicted of indecent assault on a child and sentenced to ten years at the Adult Correctional Institutions ("ACI"), beginning November 4, 1983.

2. In January 1989, the Medium Security facility at the ACI had a health clinic that was staffed by a physician once a week. The remainder of the week the clinic served as a dispensary for inmates to receive daily medications or to see a correctional officer nurse.

3. In January 1989, Dr. William Chang, employed by the State as a physician, was assigned to the above clinic by prison authorities.

4. For security purposes, inmates desiring to see the physician were required to make such requests in advance; these requests were directed to certain staff personnel.

5. A correctional officer nurse would schedule the examinations. Dr. Chang would not do this himself.

6. At all material times, Dr. William Chang was licensed to practice medicine in the State of Rhode Island and was one of several physicians who would handle "sick call" at the ACI Medium Security clinic one day a week.

7. At all material times, Cleo Dardeen was a correctional officer nurse and was a Licensed Practical Nurse licensed by the State of Rhode Island and working in the Medium Security clinic and dispensary at the ACI.

8. At all material times, John Moran was the director of the ACI.

9. On January 13, 1989, Eugene Souza attended sick call at the ACI clinic to see a doctor.

10. On January 13, 1989, Cleo Dardeen identified Eugene Souza as a patient to be seen by the doctor who worked the clinic that day.

11. On January 13, 1989, Dr. Chang, in the course of his clinic duties, gave treatment to Eugene Souza.

12. It is documented by Dr. Chang that on January 13, 1989, Eugene Souza complained to Dr. Chang of low back pain, accompanied by spasm.

13. Dr. Chang gave Eugene Souza a physical examination and ordered medication to relieve his symptoms.

14. On January 13, 1989, Dr. Chang instructed Eugene Souza to return in seven days if his complaints persisted.

15. On subsequent days, Eugene Souza would come to the ACI dispensary to receive medication as ordered, and medication would be given to him pursuant to the prescription of Dr. Chang.

16. Eugene Souza came to the dispensary and received medication on certain shifts—January 14, 15, 16 and 17. Eugene Souza did not come to the dispensary for his medication on January 18.

17. On the medication sheet, initials without a circle mean the inmate appeared for and was given his medication. A circle on the chart or a blank indicates the patient did not arrive as scheduled for medication. The medication sheet reflects the foregoing recited facts.

18. At no time did Dr. Chang, Nurse Dardeen or Director Moran ever deny, delay or withhold prescribed treatment from Eugene Souza.

19. At no time after his examination on January 13, 1989, and before being summoned to the cell block on January 18, 1989, did Dr. Chang have an opportunity to examine Eugene Souza, nor were any complaints by or about Eugene Souza communicated to Dr. Chang.

20. Between January 13, 1989, and January 18, 1989, John Moran did not receive any complaints from Eugene Souza.

21. Between January 13, 1989, and January 18, 1989, Nurse Dardeen did not receive any complaints from Eugene Souza.

22. On January 18, 1989, Nurse Dardeen was summoned to Eugene Souza's cell by other prison staff in order to render medical treatment to Eugene Souza.

23. Nurse Dardeen went to Eugene Souza within minutes of being summoned.

24. Nurse Dardeen immediately attempted to render medical care to Eugene Souza.

25. After Nurse Dardeen arrived at Eugene Souza's cell, Dr. Chang was summoned to render care to Eugene Souza.

26. Within minutes of being requested, Dr. Chang came to Eugene Souza and immediately attempted to render medical care.

27. Dr. Chang summoned an ambulance to transport Eugene Souza to Kent County Hospital—and Eugene Souza was so transported.

28. Neither Dr. Chang, Nurse Dardeen or Director Moran denied, delayed or withheld medical treatment from Eugene Souza.

29. Eugene Souza was transferred by rescue to Kent County Memorial Hospital on January 18, 1989.

30. On January 18, 1989, Eugene Souza expired from a perforated viscus and peritonitis with septic shock.

31. At no time did Dr. Chang, Nurse Dardeen, or John Moran deny, delay or withhold medical treatment from Eugene Souza, nor did they ever intend to deprive him of any constitutional right.

On the other hand, the plaintiff contends the following facts establish a genuine dispute as to material facts.[1]

1. From the end of November 1988, to the time of his death, Eugene Souza complained daily of belly aches.

2. From the end of November 1988, Mr. Souza developed a bloated belly which was noticeable even under his clothes.

3. During the same period, Mr. Souza would eat little food and miss many meals because of his condition and the constant pain he was experiencing.

4. During the same period, Eugene Souza complained of pain and vomited on a frequent basis, and such complaints and symptoms were known to Nurse Dardeen.

5. During the same period, Eugene Souza went to sick call twice a day every single day and reported his symptoms and extreme stomach pain to the nurse on duty.

6. During the same period, Eugene Souza constantly complained of the failure of the nurse and the doctor to do anything about his belly aches.

7. Nurse Dardeen did not schedule an appointment for Eugene Souza with Dr. Chang until January 13, 1989.

8. Nurse Dardeen "acted grossly and recklessly negligent in not attending to Mr. Souza's medical needs between January 13th up to the time of his death." (Opinion of Jean Robinson, R.N. as described in plaintiff's second set of interrogatories.)

9. Eugene Souza was "suffering from appendicitis at least two weeks before he died" and more likely up to six weeks; that his symptoms had to be detectable when he was examined on January 13th by Dr. Chang; that Dr. Chang's failure to diagnose Souza's condition can be ascribed only to Dr. Chang's gross incompetence, recklessly inadequate examination or a combination of the two. (Opinions of James

O'Brien Ph.D., M.D. and William Q. Sturner, M.D. as described in plaintiff's answer to second set of interrogatories.)

10. At the time of the January 13, 1989 examination, Eugene Souza was ashen colored, had a high fever, distended abdomen, no appetite and severe pain. (Answer to Interrogatory 77).

11. Dr. Chang prescribed a muscle relaxant for Mr. Souza and allowed him to continue taking laxatives.

12. John Moran had authority and responsibility over the procedures and personnel utilized to provide medical care for inmates.

13. Had Eugene Souza been "properly diagnosed and treated, he would have lived." (Opinion of Dr. O'Brien as described in plaintiff's second set of interrogatories.)

### III.

### A. *Eighth Amendment*

■ The Eighth Amendment protects inmates from the infliction of "cruel and unusual punishment." This protection extends to inmates who are denied needed medical treatment. Prison officials who fail to provide essential health care violate the Eighth Amendment when they display " 'deliberate indifference to a serious medical need.' " *DesRosiers v. Moran*, 949 F.2d 15, 18 (1st Cir.1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Inadvertent failures to provide medical care or ordinary medical malpractice are not enough to show "deliberate indifference." The plaintiff must show that the defendants had a culpable state of mind which may be manifested by their denial, delay, or interference with essential health care. *DesRosiers*, 949 F.2d at 19.

---

1. Unfortunately, not even the Federal Rules of Civil Procedure can totally obliterate the endless pleadings so prevalent at common law. Fourteen motions to dismiss have been filed in this case and if I were to approach these Motions to Dismiss or in the Alternative Motions for Summary Judgment in a technical manner, they too would be delayed. The plaintiff did not submit a Statement of Disputed Facts as directed in a conference wherein it was decided to dispose of the qualified immunity issue by way of summary judgment and as required by Local Rules of this Court. I gleaned the plaintiff's position from the pleadings, memoranda, interrogatories, and the affidavit of Philip Perry.

■ The standards are complicated when the inmate has received some medical attention, but claims the care was inadequate. " '[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.' " *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976)). Treatment may, however, be so clearly inadequate as to be tantamount to a denial. *See e.g., Miranda v. Munoz,* 770 F.2d 255 (1st Cir.1985).

■ The standards are also complicated when an administrator or supervisor is accused of displaying deliberate indifference to a prisoner's medical needs. To be sure, supervisors may only be found liable for their own acts or omissions. *Miranda,* 770 F.2d at 260. But when a supervisor is accused, they "need not have actual knowledge of the specific incident ... if they had the power and duty to alleviate the conditions which led to the violation." *Id.*

I will now consider these standards in the context of the summary judgment motion premised on the qualified immunity defense.

### B. *Dr. William Chang—Qualified Immunity*

*Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir.1992) clearly and thoroughly enunciates the prerequisite dictates for a qualified immunity defense available to state officials exercising discretionary authority—such as exists in the case at issue.

As an initial inquiry, I must "ascertain whether the plaintiff has alleged, with the requisite particularity, that [the defendants] violated some right emanating from federal law." *Id.* I look to the complaint and amended complaint. My February 15, 1991 order found that the allegations sufficiently established personal liability:

> Apart from *Will, supra,* the defendant argues that "the gravamen of plaintiff's complaint against Dr. Chang is that the physician failed to properly diagnose and treat plaintiff's medical condition.... Injury resulting from alleged negligence does not rise to a level of a violation of

constitutional rights." *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). This is true; failure to treat a medical complaint rises to the level of a constitutional deprivation only when the defendant is deliberately indifferent, a standard which includes only "wanton infliction of unnecessary pain" and not mere accident or inadvertent failure. *Estelle v. Gamble,* 429 U.S. 97, 104–106, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). The conduct must offend "evolving standards of decency." *Id.* at 106, 97 S.Ct. at 292.

The defense argument is not without some substance. I am, however, convinced that such argument reads the complaint too narrowly. It does state that the defendant, Dr. Chang, was "deliberate[ly] indifferen[t]" and that the other "medical staff members who dealt with Decedent were so outrageously indifferent as to amount to wanton recklessness." Though not a model of pleading, it seems to me the allegations are sufficient to overcome summary dismissal.

A motion to dismiss the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Conley [v. Gibson],* 355 U.S. [41] at 45–46, 78 S.Ct. [99] at 101–102 [2 L.Ed.2d 80]. The complaint here, though minimal in implicating Dr. Chang, does accuse him of unconstitutional conduct, "deliberate indifference," in violation of the Eighth Amendment to the United States Constitution. As to the other defendants, I find that under the umbrella of "outrageous indifferen[ce]," evidence can be presented to prove "deliberate indifference;" that is, something more than "wanton recklessness" as the plaintiff has pleaded. It is inimical to the spirit and letter of the federal rules of pleading to place a purist interpretation on words of pleading simply to defeat an action. *Conley,* 355 U.S. at 48, 78 S.Ct. at 103. The tactics all too common under Common Law Practice and Pleading are

long gone and anachronistic to current practices. *See* 5 Wright & Miller, Federal Practice and Procedure § 1202 (1990). 758 F.Supp. at 801–802.

In short, I found the complaint does allege that Dr. Chang violated a right "emanating from federal law." True, the complaint and amended complaint are couched in conclusory terms but that is sufficient for resolution of the issue as to whether or not the action survives qualified immunity. If my interpretation of the complaint is in error, then, of course, like a house of cards, it falls as a federal cause of action.

■ "The next step is to ascertain whether the right at issue was 'clearly established' at the time of infringement. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 [*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. If it was, an inquiring court can then presume that the defendant knew, or should have known, that his conduct was beyond the pale. *See Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39 [*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)]; *Amsden,* 904 F.2d at 752 [*Amsden v. Moran,* 904 F.2d 748 (1st Cir.1990), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991)]." *Buenrostro,* 973 F.2d at 42.

The plaintiff's right here was not to be treated with deliberate indifference. Premised on my conclusion that the allegation of deliberate indifference is sufficient, it is tantamount to an averment that Dr. Chang engaged in a premeditated and intentional course of action with full awareness of the possible consequences.

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The First Circuit has defined a genuine issue of material fact as one that " 'might affect the outcome of the suit under the governing law ...' " Thus, " 'in a run-of-the-mill civil case,' " the court must ask " 'whether a fairminded jury could return a verdict for the plaintiff on the evidence presented.' "

*Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

I must " 'look at the record ... in the light most favorable to ... the party opposing the motion ...' Similarly, the court must indulge all inferences favorable to the party opposing the motion. These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase 'to pierce formal allegations of facts in the pleadings ...', and to determine whether further exploration of the facts is necessary." *John Sanderson & Co. (Wool) Pty., Ltd. v. Ludlow Jute Co., Ltd.,* 569 F.2d 696, 698 (1st Cir.1978) (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (citations omitted)).

■ It is my opinion, and I so rule, that the facts offered by the defendants, more especially the opinion of Doctors O'Brien and Sturner, present a genuine issue of material facts on the issue of qualified immunity. Grossly incompetent and recklessly inadequate examination by a licensed physician is a deliberately indifferent examination. This is ineluctably so when the manifested symptoms scream of a diagnosis that virtually lies within the knowledge of a lay person. It can hardly be gainsaid that any doctor would know or should have known his conduct was "beyond the pale." To attempt to argue that such opprobrious behavior falls within the bounds of constitutionally acceptable conduct is like insisting the fabled unicorn and martians actually exist.

■ Indulging all inferences favorable to the plaintiff, it must be said that the above alleged facts allow the inference that Dr. Chang knew of Souza's symptoms and did nothing about them. Alternatively, the facts allow the inference that Dr. Chang's examination was so deficient as to manifest a purposeful indifference to Eugene Souza's needs. Courts are reluctant to raise a misdiagnosis to the level of a constitutional

violation, but will do so when the failings in the process or outcome of such a misdiagnosis are particularly glaring. This is not a case where the evidence demonstrates a carefully thought-out medical decision. Indeed, inferring Dr. Chang's knowledge of Souza's complaints makes the treatment seem so inadequate as to shock the conscience. *Cf. Sires v. Berman*, 834 F.2d 9 (1st Cir.1987).

■ Additionally, issues concerning state of mind are often poor candidates for resolution at summary judgment. *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928–929 (1st Cir.1983). The determination of a defendant's mental state is usually best accomplished by a jury. Therefore, it must be said that plaintiff has alleged facts sufficient to prevent Dr. Chang from raising the shield of qualified immunity.

## C. *Nurse Cleo Dardeen—Qualified Immunity*

As with Dr. Chang, plaintiff must allege facts sufficient to show "deliberate indifference" on the part of Cleo Dardeen as to Souza's known medical condition. To make this showing, plaintiff has alleged the following:

1. Nurse Dardeen knew of Souza's constant abdominal pains, knew of his vomiting, and knew of his continual appearances at sick call extending from a period starting in late November 1988 to mid-January 1989.

2. Nurse Dardeen did not allow Eugene Souza to see Dr. Chang until January 13, 1989.

3. Nurse Dardeen's failure to attend to Eugene Souza's medical needs between January 13th and the time of his death was grossly and recklessly negligent.

■ This is difficult, in that the standard is deliberate indifference to a *known* medical need. Normally, once a doctor has made a diagnosis and prescribed treatment, the paramount and obvious need is the delivery of that treatment. It is undisputed that Nurse Dardeen promptly and correctly provided Eugene Souza with the pre-

scribed treatment. Normally that would end the inquiry. However, Nurse Dardeen had a quasi-diagnostic role in the prison dispensary. She had responsibility for deciding whose complaints were serious enough to merit an appointment with the doctor.

Indulging all favorable inferences, plaintiff has sufficiently alleged that it is in this role that she displayed "deliberate indifference." The alleged facts allow the inference that Nurse Dardeen knew of Eugene Souza's chronic pain and complaints before and after the January 13th examination. Further, they allow the inference that her failure to provide Souza with further assistance after the prescribed treatment proved ineffectual was purposeful. Nurse Dardeen, therefore, is not immune from suit.

## D. *Director John Moran—Qualified Immunity*

■ The plaintiff has not alleged any facts which show that John Moran had personal knowledge of Eugene Souza's condition. Therefore, in order to show that he was "deliberately indifferent" to the needs of Eugene Souza, plaintiff must sufficiently allege facts which show that John Moran was responsible for the conditions which led to Souza's denial of essential medical treatment. To do this, plaintiff has alleged one fact beyond those which defendants have recognized as undisputed:

1. John Moran was responsible for the procedures used to provide medical treatment to inmates.

Taking this allegation as completely true, it still leaves the plaintiff's allegations wanting. It is undisputed that doctors were available only once a week and that nurses limited inmates' access to those doctors. Nowhere, though, has plaintiff alleged the causal link between these procedures and the denial of care to the plaintiff.

It cannot be said that Director Moran was "deliberately indifferent" in relying on nurses and doctors licensed by the State of Rhode Island to exercise informed medical judgment and to provide adequate health

care. Defendant Moran then has successfully raised the defense of qualified immunity.

As to John Moran, I grant the defendants' motion. Summary judgment will be entered for the defendant John Moran. All other motions are denied.

SO ORDERED.