Gilbert DIAS

v.

George A. VOSE, et al.

Civ. A. No. 90–CV–11589 RGS.

United States District Court,
D. Massachusetts.

Aug. 30, 1994.

Allen N. David, Elsie B. Kappler, Peabody & Arnold, Boston, MA, for plaintiff.

Gilbert Dias, pro se.

Veronica M. Madden, Herbert C. Hanson, Dept. of Correction, Boston, MA, for defendants.

Bruce R. Henry, Charles H. Yelen, Morrison, Mahoney & Miller, Boston, MA, for Drs. Goldberg & Cohen.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

STEARNS, District Judge.

### INTRODUCTION

This case is on remand from the First Circuit Court of Appeals. Two motions for summary judgment on plaintiff Gilbert Dias's claim of violations 42 U.S.C. § 1983 are before the court. Both seek dismissal of Dias's allegations that the medical care he received while in the custody of the Massachusetts Department of Correction was so inadequate that it violated the Eighth Amendment's Cruel and Unusual Punishment Clause.

### BACKGROUND

On June 21, 1990, Gilbert Dias, a Massachusetts state prisoner, filed a pro se Complaint that in its final amended form alleged seven distinct claims of civil rights violations against twenty-five named defendants. On October 23, 1990, the district court, invoking 28 U.S.C. § 1915(d), dismissed most of Dias's claims, including the one now before the court. Thereafter, the district court granted summary judgment in favor of the surviving defendants on all remaining claims. The First Circuit affirmed the district court's orders with the exception of the dismissal of what it denominated the "fourth legal claim," a galaxy of allegations involving the denial of adequate medical care. "[S]ummary dismissal, *sua sponte*, of an indigent's complaint is appropriate under 28 U.S.C. § 1915(d) only when the 'claim is based on an indisputably meritless legal theory.'" *Dias v. Vose*, 960 F.2d 143, 1992 WL 83270, at *2 (1st Cir.1992) (cited pursuant to Local Rule 36.2(b)6). See *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989).

On remand to the district court, the remaining defendants [1] (two prison doctors and two prison nurses) renewed their motions for summary judgment. Although the motions were filed separately, they were ordered consolidated. On January 20, 1994, Dias's case was transferred to the undersigned judge.

### DISCUSSION

The material facts,[2] viewed in the light most favorable to Dias as the non-moving party, are taken from the amended complaint, defendants' motions for summary judgment and supporting materials, plaintiff's opposition, and the statements of counsel at the hearing on the motions.[3] These facts are recited where appropriate in the discussion of Dias's legal claims.

For present purposes, Dias's "fourth legal claim" can be divided into five distinct fact groups, each involving various of his alleged maladies. Four of the five "groups" concern only Dr. Cohen. The fifth group raises issues concerning care in which all four defendants played a part. In his Amended Complaint, Dias contends that the acts and omissions associated with each separate group rise to the level of an Eighth Amendment violation.

Dias first alleges that Dr. Cohen refused to treat some of his ailments. He claims that in March of 1989, he complained to Dr. Cohen of high blood pressure, chronic head-

---

1. Dr. Ronald Goldberg, Dr. Phin Cohen, Clair Wilson, and Evelyn Alborghetti.

2. Certain factual allegations I do not deem material. One of these concerns a letter written by Dias to Dr. Goldberg in August of 1989 complaining of tooth pain. Dias contends that he never received an explicit response. The timing of Dias's first complaint to medical personnel on October 1, 1989, the day he was stricken with appendicitis, is also disputed. Dias contends that he first visited the prison infirmary "early in the morning." Defendants contend that his first complaint was lodged much later in the day. Whichever version is accurate, there is no dispute as to the sequence and timing of the events that followed.

3. The parties have not conformed perfectly to the requirements of Local Rule 56.1. The Local Rule requires that the moving party file a "Statement of Undisputed Facts" and that the non-moving party file a "Statement of Disputed Facts." The "Statement of Facts" section of Doctor Cohen's and Doctor Goldberg's memorandum in support of their motions for summary judgment implies that they largely accept Dias's recitation of the facts. The memorandum in support of nurses Wilson's and Alborghetti's motions does not contain a "Facts" section, however, statements in the "Argument" section suggest that they, like the doctors, also agree essentially with Dias's version of events. Dias has submitted a "Statement of Disputed Factors"; however, it appears for the most part to consist of facts that are not actually contested.

aches, pain in his side, and severe weight gain. According to Dias, Dr. Cohen treated only his high blood pressure. Second, Dias alleges that between May of 1989 and January of 1990, he complained of pain in two teeth, and that Dr. Cohen refused to authorize dental care.[4] Third, Dias alleges that although he had been diagnosed as suffering from Hepatitis, Dr. Cohen refused to treat him and that he developed cirrhosis of the liver as a result. Fourth, Dias alleges that Dr. Cohen ignored his complaints of pain in his upper right quadrant and refused to authorize a CT scan that would have detected gallstones. Finally, Dias alleges that his acute appendicitis was not properly diagnosed or treated by doctors Cohen and Goldberg and nurses Wilson and Alborghetti.

### SUMMARY JUDGMENT STANDARD

■ Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op Society*, 3 F.3d 495, 497 (1st Cir.1993). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A nonmoving party cannot rest on mere allegations; the nonmoving party must adduce specific, provable facts that establish that there is a triable issue. *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted).

### THE LEGAL STANDARD

■ "In order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Miranda v. Munoz*, 770 F.2d 255, 259 (1st Cir.1985) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)).

#### Serious Medical Need

■ "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir.1990). Defendants, for these purposes, do not dispute the seriousness of Dias's medical needs. Consequently this first element can be deemed established.

#### Deliberate Indifference

■ Under *Estelle, supra*, 429 U.S. at 104, 97 S.Ct. at 291, specific acts or omissions relative to a prisoner's medical treatment may manifest "deliberate indifference" on the part of prison officials to a prisoner's well-being. The plaintiff must demonstrate that these official failures constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." *Id.* at 105–106, 97 S.Ct. at 291–92. Implicit in the *Estelle* standard is the notion of conscious intent.

In *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a suit arising out of a sexual assault on a transsexual prisoner housed by officials in the general prison population, the Supreme Court made explicit what *Estelle* implied by holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

4. While Dias's Opposition to the motions for summary judgment attributes the refusal to Dr. Goldberg, the Amended Complaint appears to blame Dr. Cohen. Because it makes no difference to the analysis, I will assume that Dr. Cohen is the intended culprit.

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, 114 S.Ct. at 1979. *Farmer,* in other words, equates "deliberate indifference" with "criminal recklessness," the state of mind that arises "when a person disregards a risk of harm of which he is aware." *Id.* at —— – ——, 114 S.Ct. at 1978–1979.

■ In light of *Estelle,* the emphasis in *Farmer* on a subjective test of recklessness comes as no surprise. See, e.g., *DesRosiers v. Moran,* 949 F.2d 15, 19 (1st Cir.1991). Insight into the "deliberate indifference" standard can be gained from pre-*Farmer* cases in which allegations were found to fall short of a *prima facie* Eighth Amendment violation. Clearly, it is not enough for a plaintiff to plead simple negligence in tort:

> [A] defendant's 'acts or omissions' must amount to more than negligence in the diagnosis or treatment of a medical condition. *Estelle v. Gamble,* [429 U.S.] at 106[, 97 S.Ct. at 291–92]; *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981) (where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law); *Ferranti v. Moran,* 618 F.2d 888, 891 (1st Cir.1980) (a dispute with an exercise of professional [medical] judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation). *Dias v. Vose,* 1992 WL 83270, at *3 (1st Cir.1991) (cited pursuant to Local Rule 36.2(b)6).

A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant,* 657 F.2d at 473. Indeed, "though it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy." *United States v. DeCologero,* 821 F.2d 39, 42 (1st Cir.1987).

### "Deliberate Indifference" and Summary Judgment

Because the element of "deliberate indifference" by definition requires a subjective inquiry, courts are cautious in granting summary judgment. However, where no reasonable view of the alleged facts permits an inference of culpable intent on a defendant's part, summary judgment is warranted. In *Torraco v. Maloney,* 923 F.2d 231 (1st Cir. 1991), the First Circuit upheld a grant of summary judgment where the mother of a mentally ill prisoner attributed his suicide to deliberate indifference by prison officials to his mental disorder. While acknowledging that "[a] state-of-mind issue such as the existence of deliberate indifference usually presents a jury question," the Court held that "where there is no evidence of treatment 'so inadequate as to shock the conscience, let alone that any deficiency was intentional,' or evidence of acts or omissions 'so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred,' summary judgment is appropriate." *Id.* at 234 (citations and internal ellipsis omitted).

By way of contrast, in *Durmer v. O'Carroll,* 991 F.2d 64 (3rd Cir.1993), the Third Circuit reversed a district court's grant of summary judgment to a doctor who allegedly failed to prescribe physical therapy for a prisoner's previously diagnosed medical problems.

> "[Defendant's] intent becomes critical: if the inadequate care was a result of an error in medical judgment on [defendant's] part, [plaintiff's] claim must fail; but, if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, then [plaintiff] has a viable claim. It is therefore important that the trier of fact hear [defendant's] testimony in order to assess his credibility, and that [plaintiff's] counsel be permitted to explore the doctor's motivation on cross-examination." *Id.* at 69.

The difference between situations presenting issues of triable fact and those warranting summary judgment is often a matter of degree. In *Rogers v. Evans,* 792 F.2d 1052 (11th Cir.1986), a suit arising out of the

psychiatric care of a prisoner who committed suicide, the Eleventh Circuit upheld a grant of summary judgment for all of the medical defendants with the exception of a prison psychiatrist who had maintained extensive contact with the prisoner from the beginning of her incarceration, and who had prescribed the tranquilizer that was shown to have caused her death. The Court found that the "evidence could permit an inference ... that [decedent] suffered pain and extreme distress" as a result of the doctor's "gross incompetence." *Id.* at 1062. The Court acknowledged that while mere negligence or medical malpractice has no constitutional dimension, "[m]edical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment." *Id.* at 1058. In contrast to the psychiatrist, the four successful defendants had relatively little contact with the prisoner.

*Rosen v. Chang,* 811 F.Supp. 754 (D.R.I. 1993), is somewhat similar to our case, although in *Rosen* the inmate's untreated appendicitis proved fatal. The decedent's estate alleged that from the end of November, 1988 until his death on January 18, 1989, the prisoner had suffered from belly aches and a bloated belly. During this time he complained of pain, went on sick call twice a day, and protested the failure of the medical staff to address his complaints. Plaintiff's expert witnesses characterized the conduct of the medical staff as "grossly and recklessly negligent", "gross[ly] incompeten[t]" and "recklessly inadequate." The judge in *Rosen* held that, "[i]ndulging all inferences favorable to the plaintiff, in must be said that the above alleged facts allow the inference that [the doctor] knew of [the prisoner's] symptoms and did nothing about them. Alternatively, the facts allow the inference that [the doctor's] examination was so deficient as to manifest a purposeful indifference to [the prisoner's] needs." *Id.* at 760. Consequently, the motion for summary judgment was denied.

## ANALYSIS

■ Dias's first group of allegations concerns acts and omissions that he attributes exclusively to Dr. Cohen. Specifically, he alleges that Dr. Cohen failed to address three of the four medical problems for which he sought treatment. However, Dr. Cohen's undisputed version of the facts is that on a number of occasions Dias refused treatments and consultations arranged on his behalf. Dias admits that Dr. Cohen prescribed different medications on a weekly basis to address his ills. Some of these Dias refused to take. If deliberate indifference was at play, it was only so on Dias's part in failing to follow Dr. Cohen's advice.

■ Dias's second set of allegations concerns his allegedly deficient dental care. Dias claims that for nine months he complained to Dr. Cohen about tooth pain, but that Dr. Cohen refused to prescribe treatment. Dias, however, does not dispute Dr. Cohen's contention that immediate dental surgery was inadvisable, indeed dangerous, given Dias's elevated blood pressure.[5] Moreover, the dental work was performed once Dias's blood pressure returned to normal. Dias presents no evidence that casts doubt on Dr. Cohen's medical judgment, much less suggests any deliberate dereliction in the care Dr. Cohen provided.

■ Dias next alleges that, after being diagnosed with Hepatitis, he received no treatment from Dr. Cohen. As a consequence he claims to have developed cirrhosis of the liver. Despite the allegations, the record contradicts Dias's assertions that his Hepatitis went untreated. Dias's actual complaint appears to be that Dr. Cohen refused to authorize immediate treatment with Interferon, a highly experimental drug with significant potential side effects.[6] While Dias might have preferred a different course of treatment than the one chosen by Dr. Cohen, frustration of a prisoner's treatment wishes is not a matter of constitutional concern. *Layne, supra,* 657 F.2d at 473.

---

5. Dias's dentist, Dr. John Hsu (one of the dismissed defendants), had similar concerns.

6. Dias was eventually approved for treatment with Interferon after a liver biopsy and other risk assessments were performed.

Dias's fourth group of allegations concerns his gallstone condition, which he contends was diagnosed only after he was forced to endure prolonged pain. The issue raised is at best one of medical negligence. Essentially Dias faults Dr. Cohen's failure to order an immediate CT scan. He offers no evidence that Dr. Cohen intended to cause him harm by neglecting to do so[7].

Dias's more problematic fifth group of allegations, which concerns the treatment he received for his appendicitis, implicates the acts and omissions of all four defendants. Dias alleges that, on October 1, 1989, he began to suffer intense pain in the right side of his lower abdomen. According to Dias, he was ineffectually treated with a pain reliever and indigestion medicine by nurses Wilson and Alborghetti, and was then required to wait three hours before an examination by Dr. Goldberg resulted in a preliminary diagnosis of appendicitis. Dr. Goldberg recommended outside hospitalization to Dr. Cohen, who in turn authorized Dias's transfer to Lemuel Shattuck Hospital.

Dias arrived at Lemuel Shattuck Hospital just after midnight on October 2, 1989. Because Lemuel Shattuck does not offer emergency care, Dias did not undergo surgery until the early afternoon of October 2. Dias alleges that he suffered post-operative complications because of the delay, notably peritonitis and an incisional hernia. He further alleges that Dr. Cohen knew that Lemuel Shattuck did not have an emergency facility when he authorized the transfer. Dias finally alleges that after his complications manifested themselves, Dr. Cohen refused to authorize the use of a CT scan to locate the incisional hernia.[8]

The essence of Dias's complaint is that the defendants' procrastination in diagnosing and treating his symptoms caused unnecessary pain and post-operative complications. I will consider the role attributed to each defendant separately.

7. Dias has since been operated on to alleviate the gallstone condition.

8. Dias also alleges that during his recuperation he was confined in an unsanitary ward at the Cedar Junction state prison. The Amended

### Doctor Goldberg

Dias's pleadings admit that Dr. Goldberg correctly diagnosed his ailment as appendicitis and recommended immediate surgery. Dr. Goldberg promptly contacted Dr. Cohen, Dias's primary physician, to inform him of the diagnosis. There is no sustainable allegation of negligence on Dr. Goldberg's part, much less any suggestion of "deliberate indifference" to Dias's medical needs.

### Nurses Wilson and Alborghetti

Dias accuses Wilson and Alborghetti, the prison nurses, of negligently misdiagnosing his symptoms and treating him with ineffectual pain remedies. Dias also alleges that the nurses were negligent in failing to refer him immediately to a doctor. The facts are analogous to those in *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir.1987), where the Court found that a nurse's initial refusal to administer medicine, followed by a prompt change of heart, was "far from a threshold showing of deliberate indifference." While Wilson and Alborghetti selected an inappropriate treatment, they did attempt to treat Dias. When Dias failed to improve, they promptly contacted Dr. Goldberg. By Dias's own account only three hours elapsed between his visit to the nurses and Dr. Goldberg's arrival (contrast the two and one-half months in *Rosen*, *supra*, during which the prisoner received no treatment whatever).

### Dr. Cohen

Dias alleges that Dr. Cohen's decision to admit him to Lemuel Shattuck Hospital on a nonemergency basis resulted in a surgical delay that caused "unnecessary and wanton infliction of pain." It is uncontested that Dias was not operated upon for at least twelve hours after his arrival at Lemuel Shattuck. It is also undisputed that Dias suffered complications from the delay, most notably the onset of peritonitis. It is further undisputed that Dr. Cohen knew that Lemuel Shattuck did not have an emergency ward

Complaint, however, holds prison officials generally at fault for the undesirable conditions that Dias identifies and not these particular defendants.

and that he failed to appreciate the urgency of Dias's condition. And finally, it is undisputed that Dr. Cohen could have arranged for Dias to be treated at a hospital with emergency facilities. However, to make out a constitutional claim, there must be some basis for believing that Dr. Cohen deliberately selected Lemuel Shattuck intending that Dias be harmed by a postponed operation, or that he was at least conscious of the risk to Dias if he were not operated upon immediately. Dias arrived at Lemuel Shattuck at 1:00 A.M. in the morning. The surgeons at Lemuel Shattuck chose not to operate until the early afternoon (apparently sharing Dr. Cohen's belief that Dias's condition was not critical). Perhaps Dr. Cohen should have appreciated the risk of a delay. Perhaps a reasonable physician in Dr. Cohen's position would have. Dr. Cohen's failure to act more urgently might be seen as incompetent or even reckless. This is not, however, what *Estelle* and *Farmer* require. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer, supra* — U.S. at ——, 114 S.Ct. at 1979. See also *Ferranti v. Moran,* 618 F.2d 888, 890–891 (1st Cir.1980). "[I]n order to establish deliberate indifference, the complainant must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain.... While this mental state can aptly be described as recklessness, it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." *DesRosiers v. Moran, supra,* 949 F.2d at 19. The factual allegations against Dr. Cohen describe negligence. They do not describe a deliberate purpose to do harm.

### ORDER

For the foregoing reasons, the motions of defendants Wilson and Alborghetti and Doctors Goldberg and Cohen for summary judgment are *ALLOWED.*

SO ORDERED.