Carter v. Corrections                       CV-94-113-B    08/15/95

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Scott A. Carter

    v.                                        No. 94-113-B

Commissioner, New Hampshire
Department of Corrections, et al.


## O R D E R

Pro se plaintiff Scott A. Carter brings a civil rights action alleging violation of his Eighth and Fourteenth Amendment rights at New Hampshire State Prison ("NHSP"). The defendants,[1] Nathan Sidley, director of medical services, and Stephen Gressitt, staff psychiatrist, move for summary judgment. For the following reasons, I grant summary judgment in their favor.

## STANDARD OF REVIEW

I review the defendants' motion for summary judgment under the familiar standard. Summary judgment is appropriate if the materials in the record show that no genuine dispute as to any material facts exists and that the moving party, the defendants

---

[1] The claims against the other defendants, former and present commissioners of the department of corrections, were dismissed previously.

here, are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). I must view the record in the light most favorable to the non-moving party, the plaintiff, and resolve all reasonable factual inferences in his favor. Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988). If the defendants present a properly supported motion for summary judgment, the plaintiff must demonstrate that a material factual dispute renders summary judgment inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). I recite the pertinent facts in light of the summary judgment standard and then address the legal issues.

## BACKGROUND

Scott Carter was admitted to NHSP on November 2, 1992, to serve three and a half to seven years for burglary. He was eighteen years old. On October 21, 1992, while he was in the Belknap County House of Corrections, Carter was evaluated by Dr. Marcosa Santiago on the recommendation of Carter's psychological counselor. Dr. Santiago diagnosed major depression and recommended both continued counselling and treatment with a "tricyclic antidepressant" that would also address Carter's impulsivity. The antidepressant prescription from Dr. Santiago

2

was filled for Carter and delivered to him.

Carter hoped to participate in the Shock Incarceration program at NHSP. He had the prescribed antidepressant medication with him when he was admitted to NHSP, but had not begun the course of treatment because his attorney warned him that he would not be eligible for the Shock program if he were taking psychotropic medication. He indicated on intake sheets that he was not taking medications. The intake staff sent Carter's medication to the prison pharmacy. He underwent a psychological evaluation for the Shock program on November 25 and December 1, 1992, and was found to be fit for the program. The examining psychologist noted that Carter's results might be skewed by his desire to present himself favorably and to minimize his faults, and he also qualified his evaluation to the factors known at the time. Carter entered the Shock program on December 7 but left the next day due to stress.

The medication was never returned to Carter. On January 27, 1993, he requested a session with defendant Dr. Gressitt concerning the medication. In the meantime, on February 3, Carter was seen by a psychologist in the mental health clinic for trouble sleeping. The psychologist noted Carter's fidgeting and mild depression, and referred Carter for a psychiatric

3

evaluation.

Carter arrived forty-five minutes late to his psychiatric appointment with Dr. Gressitt on February 18 because of reported problems leaving his unit, and the appointment had to be rescheduled. The next note in Carter's medical record of a psychiatric consult is on May 27. At that time, Dr. Gressitt wrote that the appointment was to clarify administration of Carter's medication, that he would refer Carter to mental health for an evaluation and would schedule another appointment, and that Carter "states he is doing o.k. now." Dr. Gressitt's notes in the record say that Carter missed his appointments on June 4 and July 9.

On July 29, Dr. Gressitt wrote that Carter was quiet during the interview but responsive to direct questions and that he complained of sleeping problems. Carter also asked for antidepressant medication. Dr. Gressitt referred him to the mental health clinic and noted that Carter said he would be alright until then. Carter next saw Dr. Gressitt on August 12. At that time, Dr. Gressitt wrote that he told Carter that because he was being counselled by the mental health clinic, he would not see him again unless he was referred.

In late August, the NHSP acting commissioner received a letter from an attorney on Carter's behalf asking that the prison consider allowing Carter to participate in an alternative incarceration program such as the Shock program while he was taking the antidepressant medication prescribed by Dr. Santiago. Dr. Sidley responded that the prison staff did not feel that Carter needed antidepressant medication and that it would not help him adapt to the Shock program. Carter filed a request slip with Dr. Sidley on September 28 complaining that Dr. Gressitt had not evaluated him or provided him with his antidepressant medication. Dr. Sidley responded that he thought Dr. Gressitt had already evaluated Carter. Carter then explained that his complaint was lack of treatment for depression. Dr. Sidley responded that Dr. Gressitt had evaluated Carter and determined that he did not need medication. No written evaluation by Dr. Gressitt appears in the record.

On October 1, Carter again asked to speak with Dr. Gressitt about his antidepressant medication, and Dr. Gressitt responded that he had asked that an appointment be scheduled. On October 17 and November 1, Carter requested that Dr. Sidley arrange an outside psychiatric consultation for him to determine whether he needed the medication prescribed by Dr. Santiago. Dr. Sidley

5

responded on November 10, "Perhaps if you go to sick call and request a psychiatric appointment, a time can be set for you to see [two doctors] both of whom now work in the prison." The same day Carter filed a grievance concerning the lack of attention to his treatment for depression. The response two weeks later was that he would be receiving an appointment. In the meantime, New Hampshire Legal Assistance wrote to the Attorney General's office on November 17 detailing Carter's complaint and asking that the prison either give him his medication or refer him for an outside psychiatric evaluation.

Carter was seen by Dr. Schopick, a psychiatrist working in the prison, on November 29. Dr. Schopick found Carter to be depressed and experiencing sleep problems. He diagnosed a serious problem with anxiety and a secondary problem with depression. He prescribed medication for anxiety and weekly counselling. Dr. Schopick's subsequent notes through June 20, 1994, indicate improvement in anxiety but some recurrent depression.

Carter filed his complaint pursuant to 42 U.S.C.A. § 1983 alleging that the defendants' failure to provide him with his prescribed antidepressant medication and appropriate treatment violated his Eighth and Fourteenth Amendment rights. Defendants

6

have moved for summary judgment on the grounds that Carter's medical treatment by the defendants did not violate the Eighth Amendment,[2] or in the alternative, that the defendants are entitled to qualified immunity.

## DISCUSSION

NHSP is obligated to provide medical care to its inmate population, and a failure to do so because of deliberate indifference to an inmate's serious mental health need violates the inmate's Eighth Amendment right to be free of cruel and unusual punishment. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991); see also Estelle v. Gamble, 429 U.S. 97, 102-06 (1976).

Deliberate indifference in the Eighth Amendment context requires subjective recklessness so that a prison official will be held liable only if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[2] A claim by an inmate alleging deprivation of treatment or medical care in prison is properly brought under the Eighth Amendment not the Fourteenth. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Therefore, I consider Carter's claim for inadequate medical treatment only as an Eighth Amendment claim.

substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). Thus, mere negligence or medical malpractice is insufficient to state a claim under the Eighth Amendment. Estelle, 429 U.S. at 106, Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993); Figueroa v. Vose, 874 F. Supp. 500, 507 (D.R.I. 1994). Similarly, inmates are not entitled under the Eighth Amendment to the treatment of their choice. Ferranti v. Moran, 618 F.2d 888, 890-91 (1st Cir. 1980).

The record establishes that Carter wanted the prison to provide him with the antidepressant medication that Dr. Santiago prescribed. Dr. Gressitt, as his notes and affidavit indicate, believed that Carter's mental health issues were better treated through counselling, rather than with medication, because of his history of substance abuse. Although Carter's history taken while he was at the Belknap County House of Corrections includes his report of two minor suicide "gestures" prior to his incarceration, he denied any suicidal ideas at that time. The psychological evaluation of Carter at NHSP done prior to his admission into the Shock program in December 1992 did not identify any serious mental health problems. While Dr. Gressitt's assessment and treatment of Carter was different from

8

that of Dr. Santiago and later Dr. Schopick, there is no evidence that defendants were aware of and disregarded a substantial risk that Carter would suffer serious harm if he did not receive the treatment he desired.  Therefore, I conclude that the defendants' conduct did not violate Carter's Eighth Amendment rights.[3] Because the undisputed facts in the record show no violation of Carter's civil rights, Carter cannot sustain his suit based on 42 U.S.C.A. § 1983, and defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons defendants' motion for summary judgment (document 18) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 15, 1995

cc:  Scott A. Carter, pro se
     Daniel J. Mullen, Esq.

_____

[3]  Having found no violation of Carter's rights, I need not consider the defendants' qualified immunity defense.

9