Thomas MACLEOD, Plaintiff,

v.

Donald KERN et al., Defendants.

No. CIV.A.03–11483 NMG.

United States District Court,
D. Massachusetts.

March 15, 2006.

James A. Bello, Morrison, Mahoney LLP, Boston, MA, for Umass Correctional Health, Arthur Brewer, Geri Chrisman, June Binney, Vivian Donnelly, Dr. Donald Kern, Defendants.

Stephen G. Dietrick, MA Department of Correction, Legal Division, Boston, MA, for Lisa Mitchel, Timothy Hall, Bernard F. Brady, Defendants.

Bruce R. Henry, Morrison Mahoney LLP, Boston, MA, for Correctional Medical Services, Umass Correctional Health, University of Massachusetts Medical Center, Arthur Brewer, Dr. Donald Kern, Geri Chrisman, June Binney, Vivian Donnelly, Defendants.

Boaz N. Levin, Morrison Mahoney LLP, Boston, MA, for June Binney, Defendant.

Charles M. Wyzanski, Attorney General's Office, Boston, MA, for Massachusetts Department of Public Health, Murphy, Jennifer, Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, Thomas MacLeod ("MacLeod") seeks declaratory relief and compensation for purported civil rights violations allegedly committed by the defendants. MacLeod claims that the defendants, Donald Kern ("Dr.Kern"), Arthur Brewer ("Dr.Brewer"), Geri Chrisman ("Chrisman"), Vivian Donnelly ("Donnelly"), June Binney ("Binney") and University of Massachusetts Correctional Health ("UMCH") (collectively "the defendants"), violated his civil rights by deliberate indifference to his medical needs relating to his Hepatitis C, a stomach mass and a testicular cyst. The defendants dispute MacLeod's claims and move for summary judgment. Having considered the memoranda in support of and opposition to the motion, the Court resolves it as follows.

### I. *Factual Background*

MacLeod, appearing *pro se*, is an inmate in the custody of the Massachusetts Department of Correction ("the DOC"). At the time the events giving rise to this action took place, he was housed at the Old Colony Correctional Center ("the OCCC"), in Bridgewater, Massachusetts. On January 5, 2004, MacLeod filed a complaint alleging violations of 42 U.S.C. § 1983 against a number of parties associated with that facility: Dr. Kern, Dr. Brewer, Chrisman, Donnelly, Binney and UMCH as well as Correctional Medical Services, the University of Massachusetts Medical Center, Jennifer Murphy, the Massachusetts Department of Public Health, former Superintendent Timothy Hall, former Deputy Superintendent Lisa Mitchell and Act-

ing Superintendent Bernard F. Brady. MacLeod amended his complaint on March 4, 2004, adding new factual allegations against the same defendants. The pending motion for summary judgment addresses claims against Dr. Kern, Dr. Brewer, Chrisman, Donnelly, Binney and UMCH. MacLeod alleges that the medical care he received from the defendants at the OCCC was constitutionally inadequate. The defendants respond that they are entitled to summary judgment because plaintiff's claim lacks evidentiary support.

MacLeod criticizes the medical care he has received at the OCCC.[1] MacLeod suffers from Hepatitis C, a condition which has caused him to have repeated interaction with the medical staff. In November, 2000, MacLeod discovered a lump protruding from the lower right quadrant of his abdomen. Although he visited the prison infirmary on multiple occasions during the following year, the problem persisted.

In April, 2001, Dr. Kern ordered MacLeod to undergo an x-ray. The x-ray "showed a mass" as a result of which MacLeod was referred to Lemuel Shattuck Hospital in Jamaica Plain, Massachusetts ("the Shattuck") where he underwent an ultrasound on April 26, 2001. The results were inconclusive.

MacLeod sent a formal grievance to defendant Correctional Medical Services ("CMS") and defendant Dr. Brewer, then Medical Director of CMS. He also sent notice of a grievance to defendant Chrisman, a registered nurse and the Administrator of Health Services at OCCC. Consequently, Chrisman interviewed MacLeod on May 14, 2001.

On September 17, 2001, "the lump was observed" at the prison infirmary and it

---

**1.** The factual background relating to plaintiff's medical history is adopted, in part, from the Report and Recommendation of Magistrate Judge Marianne B. Bowler, accepted and adopted by this Court on March 17, 2005.

was recommended that MacLeod see a surgeon. He consulted with the unidentified surgeon on September 30, 2001, and a provider consultation report was completed. Dr. Kern subsequently received and reviewed the report.

On June 4, 2002, a computerized tomography scan ("CT scan") was performed on MacLeod. MacLeod was then referred to the gastrointestinal clinic at the Shattuck in September, 2002, after "blood was detected in [his] stool." MacLeod "had a gauntlet of tests" at the Shattuck, including a colonoscopy and upper gastrointestinal exam.

During an annual physical, a substitute doctor noticed the lump and allegedly concluded that it was a hernia. On February 14, 2003, however, Dr. Kern informed MacLeod that, based on the tests performed on him, including x-ray and ultrasound, there was "no lump", even though the pain had allegedly increased.

On various occasions, MacLeod protested his medical treatment by sending complaints to the defendants. In a letter from Dr. Brewer dated April 21, 2003, MacLeod was notified that his case had been reviewed with Chrisman but that "[i]t appears that the medical staff is addressing your problem appropriat[e]ly." A letter from defendant Lisa Mitchell to plaintiff on June 11, 2003, similarly notes that she had reviewed the grievances with Chrisman.

MacLeod next met with a surgeon at the Shattuck in late November 2003. The surgeon identified the presence of a hernia and scheduled surgery. The surgeon also allegedly stated that a CT scan was "needed to access [sic] any damage or other problems".

On February 3, 2004, MacLeod saw Dr. Stephen J. Drewniak, who prescribed medication designed to treat plaintiff's Hepatitis C. In April, 2004, Dr. Brewer informed plaintiff he would be ineligible to receive the medication before January, 2005 because he had to be free of narcotics for one full year prior to treatment in order for it to be effective. (Records had previously shown that MacLeod tested positive for illegal narcotics.) The denial prompted another round of grievances by MacLeod.

In addition to the mentioned ailments, in or around September, 2001, plaintiff underwent a radiology interpretation of a bump he had noticed on his left testicle which was later determined to be a testicular cyst. MacLeod acknowledges that he received consults and examinations with respect to the cyst, which increased in size. Despite monitoring the cyst and determining it was not a danger to MacLeod, the defendants surgically removed the cyst in 2004.

## II. *Procedural History*

MacLeod commenced the instant action on July 15, 2003 by filing a Motion to Proceed *in forma pauperis,* which was allowed. On July 6, 2004, the University of Massachusetts Medical Center moved to dismiss and shortly thereafter Jennifer Murphy ("Murphy") and the Massachusetts Department of Public Health did the same. In August, 2004, plaintiff moved for a preliminary injunction to compel the defendants to provide him with the Hepatitis C medication. All of the motions were referred to Magistrate Judge Bowler. On February 8, 2005, Magistrate Judge Bowler filed a Report and Recommendation in which she recommended that 1) the Motion for a Preliminary Injunction be denied, 2) the Motion to Dismiss of the Massachusetts Department of Public Health be allowed and 3) the Motions to Dismiss of the University of Massachusetts Medical Center and Murphy be allowed to the extent that they were defendants in their

official capacities but not in their individual capacities. This Court accepted and adopted those recommendations on March 17, 2005.

On November 19, 2004, Timothy Hall ("Hall"), Lisa Mitchell ("Mitchell") and Bernard Brady ("Brady") filed a Motion for Summary Judgment and, shortly thereafter, filed a Motion to Stay Discovery pending its resolution. Plaintiff filed a Motion for Sanctions based upon defendants' alleged failure to respond to interrogatories. On July 15, 2005, this Court allowed the summary judgment motion of Hall, Mitchell and Brady, denied the motion to stay discovery as moot and denied plaintiff's motion for sanctions.

Plaintiff appealed this Court's Memorandum and Order of July 15, 2005, but on November 21, 2005, the First Circuit Court of Appeals dismissed plaintiff's appeal for lack of appellate jurisdiction because there had been no final judgment from which an appeal could be taken.

Before plaintiff's quixotic journey to the First Circuit, he filed a Motion to Compel and For Sanctions against defendants UMCH and Dr. Brewer. On May 20, 2005, the defendants Dr. Kern, Dr. Brewer, Chrisman, Donnelly, Binney and UMCH moved for summary judgment, which plaintiff opposes.

## III. *Defendants' Motion for Summary Judgment*

The hospital defendants' dispositive motion for summary judgment will be discussed first.

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*,

895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

#### 1. "Deliberate Indifference" Defined

In the seminal case of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" proscribed by the Eighth Amend-

ment. *Id.* at 104, 97 S.Ct. 285 (citations omitted). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105, 97 S.Ct. 285.

Notwithstanding the Supreme Court's recognition of a claim under § 1983, the justices were quick to place limits on what could have certainly opened the floodgates to a deluge of litigation. The Court stated:

[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105–06, 97 S.Ct. 285.

The test for Eighth Amendment violations has two prongs. First, the plaintiff must demonstrate that the deprivation alleged is, objectively, sufficiently serious. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, the plaintiff must show that officials evinced "deliberate indifference" to his health or safety. *Id.*

In *Farmer v. Brennan,* the Supreme Court addressed one of the critical questions left unanswered in *Estelle,* namely the state of mind required by a § 1983 defendant to support a finding of "deliberate" conduct. The *Farmer* Court held

that to establish "deliberate" conduct the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. As the First Circuit Court of Appeals noted in *Giroux v. Somerset County,* 178 F.3d 28 (1st Cir.1999), "[t]his standard requiring an actual, subjective appreciation of risk, has been likened to the standard for determining criminal recklessness." *Id.* at 32.

The Supreme Court defined the "indifference" element separately. As the First Circuit stated in a discussion of *Farmer:*

Prison officials cannot be indifferent, of course, if they are unaware of the risk. But even if they are aware, they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided. Conceivably, a response that was colorable and taken in good faith might still be enough to negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent).

*Burrell v. Hampshire County,* 307 F.3d 1, 8 (1st Cir.2002)(internal citations omitted).

The First Circuit has narrowly construed "deliberate indifference". In *Ferranti v. Moran,* 618 F.2d 888, 891 (1st Cir.1980), disagreement about the appropriate course of medical treatment was held not to constitute deliberate indifference. In *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981), the First Circuit held that even substandard medical treatment would not constitute a cognizable claim under § 1983 in the absence of a showing of deliberate indifference. In *Layne,* the First Circuit stated:

Thus, "(w)here a prisoner has received some medical attention and the dispute is over adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."

*Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976)). Moreover, in the context of a motion for summary judgment, the First Circuit has held that

> where there is no evidence of treatment "so inadequate as to shock the conscience, let alone that any deficiency was intentional," or evidence of acts or omissions "so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred," summary judgment is appropriate.

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991)(internal citations omitted).

### 2. Plaintiff's Evidence of "Deliberate Indifference"

In recognition of the First Circuit's narrow interpretation of "deliberate indifference", plaintiff has the unenviable task of presenting this Court with enough evidence to demonstrate that he received treatment at the hands of the defendants that was "so inadequate as to shock the conscience".

█ MacLeod had three medical complaints: 1) Hepatitis C, 2) a stomach mass/constipation and 3) a testicular cyst. With respect to the first prong of the test for Eighth Amendment violations, MacLeod argues that his medical needs were, objectively, sufficiently serious. The First Circuit has defined a serious medical need as

> one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

*Gaudreault v. Municipality of Salem, MA*, 923 F.2d 203, 208 (1st Cir.1990). MacLeod has offered sufficient evidence to demonstrate his serious medical needs and the defendants do not appear to dispute that conclusion. Rather, the critical disagreement between MacLeod and the defendants concerns the question of whether the defendants' actions constituted "deliberate indifference" as defined by the case law.

█ In the statement of material facts submitted in support of their motion for summary judgment, the defendants describe with particularity the plaintiff's extensive medical treatment between January, 2000, and February 2005. The facts established in defendants' statement indicate that MacLeod had chronic medical problems that were, nevertheless, addressed promptly by the defendants.

For example, with respect to MacLeod's stomach mass and constipation, defendants allege that they met all of MacLeod's complaints with care and attention. Defendants assert that plaintiff continuously received laxatives for his constipation, including Metamucil, Ducolax, Ciltrate, Lactulose and Calcium. For his stomach mass, MacLeod was subjected to multiple ultrasounds, CT scans, x-rays, colonoscopies and biopsies. He was referred to a bevy of specialists, doctors, nurses and medical staff. Despite the fact that many of the tests performed on MacLeod were negative for a stomach mass or hernia, the record indicates that the defendants continued to monitor and address MacLeod's complaints.

With respect to plaintiff's testicular cyst, defendants allege that they were anything but indifferent to MacLeod's condition. Ultrasounds were performed and MacLeod received consults with respect to his cyst. The size and density of the cyst was monitored and, despite the fact that the cyst

grew in size over the course of the monitoring, it was concluded that it was not a danger to the plaintiff. Despite that assessment, the defendants surgically removed the cyst as a precaution.

The evidence with respect to MacLeod's treatment for the stomach mass/constipation and the testicular cyst makes it abundantly clear that the defendants' actions do not meet the standard for deliberate indifference. Even if the plaintiff could prove that the medical treatment he received was inadequate, he is utterly incapable of demonstrating that the treatment was "so inadequate as to shock the conscience". *Torraco*, 923 F.2d at 234.

It appears from plaintiff's allegations, despite his protestations to the contrary, that his real disagreement with the defendants relates to his course of treatment, not to whether he received treatment. MacLeod does not dispute any of the factual allegations presented by the defendants with respect to the stomach mass/constipation and testicular cyst. Thus, MacLeod admits he received some medical attention and the dispute is one involving the adequacy of treatment, an area where "federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law." *Layne*, 657 F.2d at 474.

The medical treatment surrounding MacLeod's Hepatitis C is more problematic. MacLeod was diagnosed with Hepatitis C in or around January, 2000. His situation was monitored and managed by the defendants. He received clinical consults and liver biopsies and, after being placed on the medication treatment waiting list, it was decided that his condition warranted participation in a Hepatitis C medication treatment program. Before he received such medication, however, he was informed that, due to the fact that he had tested positive for illegal narcotics, he would not be allowed to begin the medication treatment until he had been substance-free for one year. The reason given for the denial of the medication was that the treatment would have been adversely affected by MacLeod's prior drug use.

MacLeod suggests that, with respect to his Hepatitis C, he was deliberately denied adequate treatment by the defendants. However, a Third Circuit Court of Appeals opinion is instructive on that point. In *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993), the Third Circuit stated that, in order for a claim of deliberate indifference to be viable, a plaintiff must offer evidence that "the failure to provide adequate medical care...was deliberate, and motivated by non-medical factors". *Id.* at 69. Although defendants denied medication for MacLeod's Hepatitis C, they had an important medical reason for doing so. Moreover, despite that denial, the defendants continued to monitor his Hepatitis C through his regularly scheduled appointments at the chronic disease clinic. Thus, any of MacLeod's complaints with respect to his treatment for Hepatitis C concerns the quality and appropriateness of treatment, not the denial or near denial of such treatment.

The central issue raised by MacLeod's complaint is that he was denied treatment or treated in a manner that was so deficient as to shock the conscience. The evidence presented by the defendants, and not substantively refuted by MacLeod, undermines those claims. MacLeod's claims relate to the course of treatment and may perhaps warrant a state law malpractice claim but they do not state a claim for violation of his constitutional rights. Because there is no evidence of deliberate indifference on the part of the defendants, summary judgment is appropriate.

## ORDER

In accordance with the foregoing, Defendants' Motion for Summary Judgment (Docket No. 100) is **ALLOWED.** Plaintiff's Motion to Compel (Docket No. 92) is **DENIED AS MOOT.**

**So ordered.**